PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Plaintiff,

v.

Lillian Mae GIBSON, Defendant-Appellant,

Venator GIBSON, Defendant-Respondent.

No. 32593.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 17, 1967.

Application to Transfer Denied Dec. 11, 1967.

**28**

Ernest L. Keathley, Vernon C. Oetting, St. Louis, for defendant-appellant.

Walter H. Pollmann, Morris B. Kessler, St. Louis, for defendant-respondent.

TOWNSEND, Commissioner.

Interpleader suit in which plaintiff life insurance company has paid into the registry of the court the contractual amount of its policy and has been discharged.

The adverse parties are the divorced first wife of the deceased insured, Arico Gibson, and his second wife. This appeal is taken from a decree in favor of the first wife. The principal issues are: 1. Whether insured and the first wife, Venator, entered into a contract at the time of divorce that insured would maintain in full force the policy in question with the first wife as beneficiary and 2. if such a contract was entered into, whether it is binding upon the second wife, Lillian, in whose favor the insured effected a change of beneficiary two years before his death. Problems of material alteration and of contract interpretation arise along the way.

At the death of Arico Gibson, two certificates of life insurance under two group policies were in full force, one issued by Prudential Insurance Company and one by Metropolitan Life Insurance Company. The Prudential policy was issued in accordance with the collective bargaining agree-

ment between Brown Shoe Company and Arico Gibson's local union. All premiums were paid up to the time of Arico's death, which the pleadings indicate occurred on or about December 25, 1964. The circumstances of the issuance of the Metropolitan group policy and certificate are not shown.

In negotiations between the insured and the first wife prior to and in anticipation of divorce the insured signed and acknowledged a stipulation prepared by Mr. Kessler, the attorney for the first wife, hereinafter referred to as respondent, which reads in part as follows:

"5. Defendant [Arico] is to maintain in full force and effect with the plaintiff [Venator] as beneficiary policy of insurance upon his life, issued to him as an employee of Brown Shoe Company by either the Teamster's Local Welfare Fund or Metropolitan Life Insurance Company group policy." [1]

This stipulation was executed in the office of the insured husband's attorney, Mr. Litz, and was by him forwarded to Mr. Kessler. Thereafter when respondent Venator executed this document in Mr. Kessler's office there had been added by her attorney at the end of the above paragraph 5 the words, "or Prudential Life insurance or any other insurance company."

The stipulation, in the altered form, is found in the file of the divorce proceeding, but is of course not embodied in the decree.

Mr. Kessler testified as to the circumstances of the alteration: "A Originally, Mr. Litz represented to me that there was one policy of insurance and that was The Metropolitan policy of insurance. Mrs. Gibson, when she came in to sign this stipulation, advised me and informed me that there were two policies. I contacted Mr. Litz and he was not sure and he couldn't tell me. He knew about The Metropolitan policy. I informed Mr. Litz that the agree-

---

1. The stipulation provided for alimony and in addition constituted a property settlement agreement, in which, inter alia, the parties disposed of items of household goods.

ment was that all policies would be carried under this stipulation and he agreed that if he was in error about there being only the one policy, that it should be changed and it was changed and I made the change before Mrs. Gibson signed this. * * * The amended stipulation was mailed out to Mr. Litz immediately after Mrs. Venator Gibson signed it, in accordance with our 'phone conversation and that was my letter to Mr. Litz. Q Which has already been offered in evidence here? A Yes, sir."

The letter referred to in Mr. Kessler's testimony was previously offered by appellant; it was dated on the same day that respondent signed the altered stipulation and read as follows: "Re: Gibson v. Gibson. Dear Mr. Litz: Enclosed find copy of Stipulation. Please note that I have made the insertion in paragraph 5 in accordance with our telephone conversation of this date. I have notified my client of the setting of April 5th, 1961."

Mr. Litz, attorney for Arico Gibson in the divorce suit, testified as follows: "Q Had you discussed the terms of this stipulation with your client, Arico Gibson, now deceased, before he signed that paper? A We had many discussions about it. * * * Q (By Mr. Pollmann) I will ask you, again, you did discuss the terms of this stipulation and settlement agreement with your client before he signed it, is that correct? A Yes, sir. * * * Q Your client knew about the language, all the language in that agreement when the divorce was granted, is that correct? A Yes, sir. Q No question about that? A No, sir. * * * Q Did you talk about the Prudential policy to your client, Mr. Arico Gibson? A We spoke about two policies and we didn't refer to them, generally, by the names of the companies from which the policies were issued, but rather, the places from where he got the policies. As I recall, he worked at Brown Shoe Company. He had one policy there and one from The Teamsters Union, and exactly which was which, I don't recall, but these were the ones that we referred to and

later, in discussions with Mr. Kessler, I found out that Prudential and Metropolitan were involved. Q That was before the divorce was granted, right? A Oh, yes. Q And you talked about this with your client and with Mr. Kessler, is that correct? A On several occasions, yes, sir. Q It was one of the aspects in agreeing to the stipulation? A It was one. Q Mr. Litz, did you ever discuss with your client, Arico Gibson, at any time, the question of whether or not he could change the beneficiary on either of these policies? Do you remember ever talking to your client about that? A Yes, we spoke several times about the entire matter. Q Well, what did you tell him, Mr. Litz? A I don't ever recall looking at the policies, but this was one of the demands or requests that the plaintiff wanted in order to wind this divorce matter up and he was willing to do anything he could, give her anything. Q In order to wind the matter up to the mutual satisfaction of both people? A That's right. * * * Q What did he tell you and what did you tell him with respect to this matter of changing beneficiaries, just as a matter of fact? * * A As I recall, one of the stipulations or items in the stipulation that Mr. Gibson agreed to was that he would give up the change of beneficiary of one or more policies that he had to his wife in consideration of the divorce, and to maintain these policies for her benefit. This was part of our alimony. * * * Q Well, specifically, did it include—did your discussions with your client, as a matter of fact, Mr. Litz, include the Prudential policy? A It included, as I said before, a policy from Brown Shoe Company and one from The Teamsters, whichever that one went along with; that was included in the discussion. Q Whether it was from Brown Shoe Company or Teamsters 688— * * * Yes, sir." Upon further cross-examination Mr. Litz was asked: "Q Mr. Litz, after this change was made, did you tell your client that the change was, in fact, made? A Certainly. I wouldn't permit Mr. Kessler to make it before I checked with Gibson. Q So, on April the 5th, 1961, when according to the

records of this court, this divorce was granted, which is now a final judgment, your client knew what was on this paper, Exhibit A, did he not? A Yes, and he— * * * Q He did, did he not? A Yes."

Subsequent to the divorce Mr. Kessler evidently notified the Metropolitan Life Insurance Company of a stipulation between Arico and Venator, for on May 26, 1961, he advised Mr. Litz that he was "receiving a little static" from Metropolitan and enclosed a waiver of right to change beneficiary form whose execution he requested Mr. Litz to procure from Arico. No mention of Prudential was made in this letter. This form was executed as requested. Upon Arico's death the principal amount of the Metropolitan policy was paid to respondent Venator by Metropolitan. On December 28, 1964, Mr. Kessler advised Prudential that respondent Venator claimed the proceeds due under the Prudential certificate and that she intended to contest the validity of any change of beneficiary made by Arico after March 16, 1961. Accompanying this letter was a copy of the stipulation as originally drawn, i. e., without the alteration previously mentioned.

■ Although the alteration of the stipulation after it had been signed and delivered was irregular, the testimony of Mr. Litz establishes that Arico, being fully advised, acquiesced in the alteration of the stipulation; there was therefore a ratification by him of the change before any move was made to utilize the stipulation in any way. In addition the stipulation so altered was subsequently filed in the divorce proceeding with full knowledge by Arico of its content. Nothing in the record suggests even a hint of any sharp practice being perpetrated upon Arico. Consequently any legal strictures relating to material alteration are inapposite. It must therefore be held that the stipulation with the added words "or Prudential Life insurance or any other insurance company" constituted the contract between Arico and Venator.

There remains the problem of determining the intentions of the parties from the stipulation so amended.

Appellant's most vigorous contention is that the stipulation filed in the divorce proceeding imposed a restriction as to a change of beneficiary on only one of the policies referred to therein. Looking to the precise wording of the stipulation we find that it refers to "policy of insurance * * * issued * * * by either the Teamster's Local Welfare Fund or Metropolitan * * *." The argument of appellant rests upon the dictionary definition of "either" which appellant finds always to be given in terms of alternatives, thus, a disjunctive conjunction which implies a choice of alternatives or a disjunctive correlative indicating that what immediately follows is the first of two or more alternatives. Similarly, appellant finds that "or" is a coordinating conjunction introducing the second of two choices when the first is introduced by "either"; she also finds that "or" is "a coordinating particle that marks an alternative, as you may read or write—that is, you may do one of the things at your pleasure, but not both." And she finds support in the statement from Black's Law Dictionary (4th ed) that "where the word 'or' is preceded by the word 'either', it is never given a conjunctive meaning."

Implicit in this argument is the assumption that the stipulation gave respondent Venator the election to determine the policy of which she was to remain the beneficiary. The argument then articulates the proposition that respondent made such an election by requiring that the insured execute a waiver of his right to change the beneficiary of the Metropolitan policy. Appellant continues: "No such waiver was executed by Respondent (sic) with respect to Prudential, again clearly showing that she had made her choice by selecting Metropolitan as the one of two policies mentioned in the agreement. She gave no indication of being interested in the Prudential policy during Gibson's lifetime after the divorce."

To simplify the presentation: Appellant maintains that by the use of "either—or" the parties intended to require Arico to maintain one policy or another—but only one—in full force with Venator as beneficiary and that Venator should have (and did make) an election between such alternatives.

We are referred to a large number of cases dealing with the interpretation of "either . . . or" and with the interpretation of "or" standing alone, in statutes, documents and contracts. Any controversy about the meaning of such words poses the question of whether they are used in the disjunctive or in the conjunctive. The dictionary definitions of "or" which have been furnished are quite in accord with prime grammatical principles; but such definitions, stated in terms of alternatives or mutually exclusive choices, are not necessarily conclusive. In Northern Commercial Company v. United States, 9 Cir., 217 F. 33, 36, the court was furnished a disquisition relating to the grammatical construction of "or"; the court denominated the discourse "interesting and academically instructive, but where the language is ambiguous, or its meaning involved, such construction must give way to the settled rules of legal construction * * * the words 'or' and 'and' are sometimes convertible, as the sense may require." Thus, in Ex parte Lockhart, 350 Mo. 1220, 171 S.W.2d 660, a series of propositions connected by the word "or" was held to be cumulative in effect, that is, "or" meant "and", and it was held that all the stated propositions must be present in order to give the petitioner the privilege which an ordinance provided. The court specifically rejected the idea that alternatives were stated.[2] In contrast, Hanley v. Carlo Motor Service Co., Mo. App., 130 S.W.2d 187, presented a situation where 'or' was clearly used for the purpose of stating conditions in the alternative

(although not mutually exclusive alternatives).

In Ex parte Lockhart, supra, the matter was thus put by the Supreme Court, at p. 666 of 171 S.W.2d: "The word *"or"* in statutes or documents is frequently interpreted to mean *"and,"* and this interpretation is given to it whenever required to carry out the plain purpose of the act or contract and when to adopt the literal meaning would defeat the purpose or lead to an absurd result.' "

█ Regarding the terms of the stipulation as creating an ambiguity, it is necessary to turn to the setting in which the words were used in our effort to ascertain their meaning. In interpreting an ordinance this court has spoken in terms equally applicable in principle to the interpretation of a contract:

"There can be no question as to the canons of construction in a case of this character. The primary rule to be observed is to ascertain the intention of the lawmakers, and, where the meaning of the statute is doubtful, any word rendering it so may be enlarged, restricted, or even stricken out in order to make the ordinance or statute conform to the true intent of the lawmakers." City of St. Louis v. Consolidated Products Co., Mo. App., 185 S.W.2d 344, 346.

█ It is elementary that where the words of a contract create an ambiguity then, in order to ascertain the intentions of the parties, resort must be had to the circumstances surrounding the formulation and execution of the contract, the relationship of the parties, the purpose to be served, the course of negotiations if any.

Appellant's contention that the contract, by the use of "either . . . or" in the stated context, set up a system of mutually exclusive alternatives cannot be accepted.

---

**2.** Similarly in Spillman v. Succession of Spillman, 147 La. 47, 85 So. 489, a series of conditions connected by the word 'or' was held to be cumulative in effect, that is, that "or" meant "and", and it was there held that all such conditions must be present in order to invoke the benefit of a statute.

(1) It is clear that, when the stipulation in its original form was framed and dealt with by the attorneys of the two parties, the document embodied no concept of alternatives because the evidence shows that they acted upon the assumption that there was only one policy covering on the life of Arico and that it was a Metropolitan group policy. Since the Metropolitan policy was a group policy Mr. Kessler was uninformed as to the exact process by which some document giving coverage on the life of Arico had been issued, whether through the Teamsters Local or otherwise. Therefore paragraph 5 was so drawn as to relate to that exact one-policy coverage whether the documentation was furnished by the Teamsters Welfare Fund or otherwise. Obviously at this stage paragraph 5 was intended to relate to only one policy. In such a setting the words "either . . . or" simply indicated that *that policy* was to be maintained in respondent's favor whether it was issued directly by Metropolitan or through the instrumentality of the Teamsters Welfare Fund. Such words therefore could not have presented a set of alternatives—they did not offer alternative courses of conduct. They did not delineate choices or elections because under the circumstances a choice was impossible—one cannot choose between a single thing! "Either . . . or" then had no relation to alternatives; the expression's reference was only to the source or origin of the presumed single policy covering on Arico's life. This use of the expression removes it entirely from the area in which the dictionary definition in terms of alternatives would operate and so renders such definition irrelevant. We see in such expression only the meaning of "whether".

(2) After the original form of the stipulation, signed by Arico Gibson, had been returned to Mr. Kessler, he was informed by his client, the respondent, that there was more than one policy giving coverage on Arico's life. Therefore the amendment was made in the endeavor to have paragraph 5 relate to more than one policy. That effort

was evidenced by the expedient of simply adding "or Prudential Life insurance or any other insurance company".

Mr. Litz testified that one of the demands made by Venator for settling the divorce matter was the inclusion of the Prudential policy in the stipulation and that Arico was willing to give her "anything" in order to wind up the divorce proceeding and that he was to "maintain these policies for her benefit". He added, significantly, "this was part of our alimony".

██ In this setting it would be difficult to interpret the amended recitation of policies as requiring Arico to maintain only one in favor of Venator. There is clearly evidenced an intention to have the stipulation cover any policy issued to Arico as an employee of Brown Shoe Company ("or any other insurance company") and we do not believe that the ambiguous "either . . . or" as first used in the original form of the stipulation can be allowed to limit the duty of Arico to maintain life insurance for Venator's benefit. Considering the whole of the amended stipulation in the setting in which we find it, we reach the conclusion that the contract meant that Arico was to maintain in her favor any policy of insurance issued to him as an employee of Brown Shoe Company *whether* issued "by Teamster's Local Welfare Fund or Metropolitan Life Insurance Company or Prudential Life Insurance or any other insurance company."

Finding that the contract obligated Arico to maintain for Venator's benefit any policy issued to him as an employee of Brown Shoe Company, we proceed to consider the legal position of Venator relative to the policy in question. Where the insured upon taking out a policy of insurance has by its terms reserved the right to change the beneficiary, it is the conventional thing to say that the named beneficiary has only a contingent interest in the policy, an interest which can be extinguished by the exercise of the insured's reserved power to change

the beneficiary. We find a limited amount of authority relating to the changed situation here presented, namely, a contract made with a beneficiary obligating the insured to maintain a present policy in full force and effect for the benefit of that presently named beneficiary. In California it has been clearly held that by such a contract the contingent interest of the beneficiary is converted into a vested equitable interest in the policy. Mutual Life Insurance Co. of New York v. Franck, 9 Cal. App.2d 528, 50 P.2d 480. Reaching the same result, another case explained that the quality of the beneficiary's interest was changed by such a contract. Shoudy v. Shoudy, 55 Cal.App. 344, 203 P. 433.[3] The precise nature of a "vested equitable interest" is not delineated by these cases; full analysis of the legal position of the beneficiary is not indulged. These cases state that the vested equitable interest may not be subsequently defeated by an effort to change the beneficiary without the consent of the contracting first beneficiary.[4] Considering the results which are deemed to flow from the finding of "vested equitable interest", it is plain that the holdings in these cases proceed upon the basis of a property concept and not simply upon breach of contract, that is, that the contracting first beneficiary, *as between herself and the insured or a volunteer*, acquires some kind of property interest in the *res* itself, namely, in the contractual promise made by the insurance company to pay so many dollars upon the death of the insured.[5] The Supreme Court of Pennsylvania has followed the property concept and has analogized the first beneficiary's position to that of an equitable assignee; in explaining the law of that state, the court said:

"The law appertaining to the equitable assignment of the benefits of an insurance policy is well settled in this state. There is no doubt that a beneficiary named pursuant to a definite agreement that he shall be so named, by virtue of a valuable consideration moving from him, acquires a right to the policy or the proceeds thereof that will be protected against subsequently named beneficiaries who have no superior equity." Visnik v. Mance, 326 Pa. 399, 191 A. 127, 129.

Subsequently in a case whose facts precisely parallel those of our present case, the Pennsylvania court said: "Our cases have uniformly recognized that a contract not to change the beneficiary, entered into by an insured and his designated beneficiary for a valuable consideration, is binding as between the insured, or his volunteer, and the contractually determined beneficiary and will be enforced in equity." Hundertmark v. Hundertmark, 372 Pa. 138, 93 A.2d 856, 858.

In Campbell v. Prudential Insurance Co., Ohio App., 137 N.E.2d 515, 73 Ohio Law Abst. 262, the Ohio Court of Appeals took the estoppel route to invalidate the insured's attempt to make his second wife the beneficiary.[6] His violation of contract was held

---

3. The stated principle has of course no application where the contract provides merely for the maintenance of a specified amount of insurance without description of a particular policy. Jacoby v. Jacoby, 69 S.D. 432, 11 N.W.2d 135.

4. It should be noted that in these cases the subsequently named beneficiary was not a bona fide purchaser for value and was not possessed of any other equity of a superior nature, a matter adverted to hereinafter.

5. Thomson v. Thomson, 156 F.2d 581, 585 (8th Cir.) states that "as against the insured or his estate she [the contracting beneficiary] acquired a vested right notwithstanding the fact that the policy by its terms reserved to the insured the right to change the beneficiary."

6. In this separation and property agreement the insured husband contracted with the first wife to maintain his insurance for the benefit of their children; the agreement was incorporated in the divorce decree, but no emphasis was placed upon that fact. In Ehrlich v. Cohn, 1 A.D.2d 1004, 151 N.Y.S.2d 802

**34**

to be utterly without effect unless an innocent party was misled or damaged by some action of the first beneficiaries.

 It is our considered opinion that the contracting first beneficiary, as between herself and the insured (or a volunteer), acquires a property interest in the subject policy which is superior to that of the insured or the volunteer. For the purpose of decision in this case it is not necessary to classify that property interest in one of the conventional categories. If the obligation to maintain the policy in favor of the contracting first beneficiary is to be treated as analogous to a contract to assign the policy that interest must be labeled an equitable one as has been done in the cited California cases.[7] As an equitable interest in a particular res it is subject to being divested (although denominated a vested equitable interest) by the intervention of a superior equity in accordance with the accepted principles of equity jurisprudence. In the present case there is no competing equity of a superior kind.

■ In this litigation the respondent has pursued her asserted interest in a specific res. She does not sue for breach of contract. In our opinion she has established that her property interest in that res came into existence years ago. The combined interests of the two litigants here would completely exhaust the specific res. In this proceeding the first wife endeavors to reduce to possession that which is clearly hers. Under such circumstances there was no occasion for her to join as a party the personal representative of the deceased insured.

The judgment is affirmed.

(affirmed 2 N.Y.2d 886, 161 N.Y.S.2d 143, 141 N.E.2d 627), on similar facts it was held that the children acquired an equitable interest in the policy superior to that of the second wife.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.

7. Cf. Locomotive Engineers Mutual Life and Accident Assn. v. Locke, 251 App. Div. 146, 295 N.Y.S. 689, affirmed 277 N.Y. 584, 13 N.E.2d 781.