Isabel PERRY, Individually, et al., Plaintiffs-Respondents-Appellants,

v.

Mary PERRY, Defendant-Respondent-Appellant.

No. 56613.

Supreme Court of Missouri,
Division No. 1.

Sept. 11, 1972.

Sullivan & Watson, A. Michael Sullivan, Michael M. Flavin, Clayton, for plaintiffs-respondents-appellants.

George W. Cady, St. Louis, for defendant-respondent-appellant.

L. F. COTTEY, Special Judge.

Alfred Perry, at the time of his divorce from Isabel in 1961, had three policies of insurance in force on his life, in each of which his mother, Mary was named as beneficiary. Two of these, in amounts of $5,000 and $2,000, were group policies written under a plan sponsored by Alfred's union, on which the premiums were paid by his employer; the third, commonly known as a G.I. policy in the amount of $10,000, had been issued in 1946 and all premiums on it from its inception were paid by Mary. Although each of the policies contained the usual provision authorizing the insured to change the beneficiary at will, at no time did Alfred ever exercise that privilege, in a formal manner on the books of the issuing companies.

As an incident of his divorce, by way of making provision for the parties' minor children, Alfred entered into a contract with Isabel whereby he agreed "to change the present beneficiary or beneficiaries on his life insurance and accident insurance policy or policies, making his minor children the beneficiaries on same, so that the minor children would receive the proceeds of said insurance policy or policies, and that he will make proper arrangements with the insurance company or companies in which his policy or policies are in force to pay said amounts in certain definite installments so as to enable said children to have their living expenses, as well as their educational needs, covered." On settled authority, that contract constituted an equitable assignment of the policies for the children's benefit and gave them a vested right to the proceeds, subject to be defeated only by proof of a superior right. Prudential Insurance Co. of America v. Gibson, Mo. App., 421 S.W.2d 26, 33–34, and cases reviewed therein; Couch on Insurance 2d, Vol. 17, § 63:370, p. 91; 46 C.J.S. Insurance § 1175, p. 83.

Nothing further was done, however; the issuing companies were never directed to change the beneficiary of the policies, and, in consequence, on Alfred's death in 1965 they paid the proceeds to Mary. It stands admitted that Mary was informed of the contract at the time of Alfred's divorce, and that she nevertheless continued to pay the premiums on the G.I. policy. Ultimately she collected the mon-

ey from all three policies, commingled it with her own funds, and rejected the children's demand for it. Isabel thereupon filed this suit on behalf of the children to impress a constructive trust on the policy proceeds for their benefit. The case followed a languid and desultory course through several hearings to eventual decision in the trial court, by which time Mary had spent the money in the payment of debts and living expenses, so she said, and there was no possibility of following the fund into the hands of any who had received it or of tracing it into any property into which it may have been converted.

That circumstance, Mary argued at the trial, entitled her to a decree in her favor in spite of her defalcation. This, because the fund was gone and no specific property could be identified as the product of its misappropriation; there was therefore nothing on which a trust could be impressed, and the equity jurisdiction of the court had consequently been exhausted in futility and frustration. The children's only recourse, so the argument concluded, was to start over again as common creditors of Mary and seek a general judgment against her in a court of law for the sum of the dissipated funds, because an action of that kind and a remedy of that sort is outside the cognizance and concern of a court of equity.

■■ The trial court rejected that argument, and properly so. It is a settled maxim that equity, once having acquired jurisdiction of a cause, will not relinquish it without doing full and effective justice between the parties, even though, to right the wrong complained of, resort must be had to a remedy within the traditional province of law, as by a judgment for money by way of restitution. Sebree v. Rosen, Mo.Sup., 374 S.W.2d 132, 138; Anison v. Rice, Mo.Sup., 282 S.W.2d 497, 502; Clay v. Walker, Mo.App., 6 S.W.2d 961, 965; McDown v. Wilson, Mo.App., 426 S.W.2d 112, 118; 30 C.J.S. Equity § 67, p. 920, et seq.; Ibid., § 71, pp. 935–936.

■ A corollary rule, in cases of this kind, is that where a defaulting trustee has first commingled the trust funds with his own and then paid them out in satisfaction of his own debts, it will be presumed that the payment was made from his own contribution to the commingled fund, "and not out of the trust money," so that whatever is left is the money for which he is accountable in his fiduciary capacity. Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, 358; Cross v. Cross, 362 Mo. 1098, 246 S.W.2d 801, 803. And if the depleted account is subsequently augmented by deposits of the trustee's personal funds, the resultant balance will be treated as trust funds on the theory that these deposits were "made by way of restitution of the trust funds previously withdrawn." Restatement of the Law, Trusts 2d, Ch. 7, § 202, p. 453. No proof of the fiduciary character of the balance remaining in the commingled account is necessary beyond that supplied by the presumption. "(T)he entire fund will be held to be a trust fund out of which the cestui que trust may be paid." Clay v. Walker, supra, 1. c. 6 S.W.2d 965; Cunningham v. Kinnerk, 230 Mo.App. 749, 74 S.W.2d 1107, 1114–1115. Nor is it necessary, in order to fasten a constructive trust on the commingled account at any stage of its balance, to prove the trustee's fraud other than by the fact of his defalcation; "a breach of the confidential relationship is, in itself, a constructive fraud." Swon v. Huddleston, Mo.Sup., 282 S.W.2d 18, 25–26.

The trial chancellor entered a decree in favor of the children for the sum of the two group policies, with interest, which it was within his proper discretion to allow. Boyle v. Crimm, 363 Mo. 731, 253 S.W. 2d 149, 157. But he impressed no trust on any balance standing to Mary's credit in the commingled account, possibly because counsel did not trouble themselves to go into that aspect of their case. As to the G.I. policy, however, the chancellor found in Mary's favor, on the declared ground that, as to it, "Mary Perry has

a superior right." Both sides, after consolidated appeals to the wrong court, Perry, etc., v. Perry, Mo.App., 463 S.W. 2d 589, have at last got the matter to us for review.

■ We are unable to follow the reasoning that led to the award to Mary of the proceeds of the G.I. policy. The only difference between it and the others was that on it Mary paid the premiums, but that difference is illusory. There was neither pleading nor proof that she did so as the result of any contract between her and the insured that in anywise impaired his right to change the beneficiary at will. Absent such a contract, the payment of premiums by one who is merely hopeful of receiving the proceeds vests no right in him, "and the insured may change the beneficiary without the latter's consent." Allen v. Aetna Life Ins. Co., 228 Mo.App. 18, 62 S.W.2d 916, 918; Dunnavant v. Mountain States Life Ins. Co., Mo.App., 67 S.W.2d 785, 789; 46 C.J.S. Insurance § 1173 b(2), p. 66. It follows that Alfred's assignment of the G.I. policy was just as valid in every way as his assignment of the group policies, and the law of the one is the law of the other.

■ It does not follow, however, that Mary should lose the money she has paid to keep the policy alive, even though she was under no obligation to make the payments and was, therefore, a volunteer to whom relief is ordinarily denied at law. The equitable doctrine is that one who pays the premiums on a policy to keep in force, in the reasonable expectation of being the beneficiary of it, will, upon the disappointment of that expectation, be entitled to reimbursement for his outlay from the one who ultimately profits from it by receiving the policy proceeds. Couch on Insurance 2d, Vol. 6, §§ 31:176 and 31:177, pp. 180–181; 46 C.J.S. Insurance § 1180, pp. 89–90. The doctrine was invoked by this court under similar circumstances in Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459, 466. It is said that this right of reimbursement does not exist, however, with respect to premiums paid after the payor's interest in the policy has been terminated by a change of beneficiaries. Couch on Insurance 2d, Vol. 6, § 31:177, p. 181. No doubt that limitation would be proper in a case where the supplanted beneficiary continued to pay the premiums after any reasonable hope he had of receiving the proceeds had been dispelled, for it would then be presumed that he intended the payments as a gift for the benefit of his successor, but that is not this case. Here the fact that Alfred made the change of beneficiaries in an unconventional manner and thereafter failed to confirm it by any "proper arrangements" of a formal nature as his contract required, viewed in the light of Isabel's apparent indifference to that neglect, was hardly calculated to dispel Mary's hope; and the fact that her payment of subsequent premiums was not made with the intent of keeping the policy alive for the children's benefit is demonstrated by her rejection of their demand for its proceeds. Misguided she may have been in paying those later premiums, but it is enough to deny her the fund without requiring her to forfeit the payments that made it available. Equity will not look a gift horse in the mouth in order to find a tooth to criticize.

The decree is reversed, and the cause remanded to the trial chancellor with directions:

1. To enter a general judgment against Mary for the proceeds of all three policies, with interest, minus the sum of the premiums she has paid to keep the G.I. policy alive, also with interest, and to impress a constructive trust for the net debt on the balance, if any, standing to her credit in the commingled account.

2. To ascertain by a further hearing the facts necessary to carry out the foregoing instruction.

HOLMAN, P. J., and SEILER, J., concur.

BARDGETT, J., not sitting.