499 F.Supp. 1308 (1980)
Jeanne B. Woods GLOVER, Plaintiff,
v.
METROPOLITAN LIFE INSURANCE COMPANY and Roberta R. Woods, Defendants.
No. 78-625C(A).
United States District Court, E. D. Missouri, E. D.
September 19, 1980.
John S. Sandberg, Shepherd, Sandberg & Phoenix, St. Louis, Mo., for plaintiff.
*1309 P. Terence Crebs, Gallop, Johnson, Crebs & Neuman, St. Louis, Mo., Michael J. Doster, Kopsky & Doster, Chesterfield, Mo., for defendants.

MEMORANDUM OPINION
HARPER, District Judge.
The plaintiff, Jeanne B. Woods Glover, a citizen of Florida, and the divorced wife of Robert Woods, deceased (hereinafter referred to as Woods), brought this action in two counts.
The first count is against Metropolitan Life Insurance Company (hereinafter referred to as Metropolitan), a mutual insurance company organized and existing under the laws of the State of New York, having its principal place of business in New York City, to recover $116,000.00, representing the proceeds of a group life insurance policy of International Shoe Company (hereinafter referred to as Interco) which it had with Metropolitan, and which covered Woods at his death as an employee of Interco.
The second count is against Roberta R. Woods, widow of Woods, and a citizen of Missouri (hereinafter referred to as Mrs. Woods). The plaintiff alleges that Metropolitan paid the $116,000.00, the policy proceeds, to Mrs. Woods after the death of Woods, even though she was not entitled to the money, and seeks to recover the $116,000.00 from Mrs. Woods and to have the proceeds of the policy impressed with a trust for plaintiff's benefit as well as a judgment for that amount.
The defendant Metropolitan filed a cross-claim against the defendant Mrs. Woods asking for an amount equal to any judgment which might be entered against it in favor of plaintiff under Count I. The defendant Mrs. Woods crossclaimed against defendant Metropolitan for an amount equal to any judgment which might be rendered against her in favor of plaintiff under Count II.
This Court has jurisdiction by reason of diversity of citizenship and the amount in controversy exceeds $10,000.00, pursuant to 28 U.S.C. 1332.
The case is governed by Missouri law since all events leading up to the suit occurred in Missouri.
When the trial of the case commenced the defendant Mrs. Woods dismissed without prejudice her crossclaim against defendant Metropolitan.
The pleadings, exhibits, stipulation, and credible testimony disclose that from August 15, 1964, until his death on February 2, 1978, Woods worked for the division of Interco which was formerly known as International Shoe Company. On October 26, 1964, Woods enrolled in the group life, health, accident and major medical insurance plan which International Shoe Company had with Metropolitan. Woods designated the plaintiff, who was then his wife of seventeen years, as beneficiary of the group life insurance policy. Woods' coverage under the group policy, No. 7000G, began in January, 1965, and continued until his death, at which time he was a vice president of Interco.
The amount of insurance under the group policy with respect to the employees covered was double the employee's salary. By 1978 Woods' beneficiary would have been entitled to $116,000.00. Woods contributed sixty cents per thousand to the premium and the employer contributed the balance. The contributions were mandatory and the value of the policy could not be varied from double the amount of the employee's salary provided for in the schedule of benefits. The employee could not assign his policy, and contributions to the premium were payable by deduction from the employee's paycheck. The employee could change the beneficiary under the group policy at will by filing a written notice with the employer.
The policy was self-administered by the employer, the group policyholder. It would issue to each employee a certificate procured from Metropolitan stating the amount of the insurance, to whom the benefits were payable, and in some detail the provisions of the policy affecting the employee.
The employer enrolled the employees in the plan, obtained, endorsed and retained *1310 the beneficiary designations and changes of beneficiaries in its files, computed and forwarded monthly premium payments to the insurance company, and processed claims and forwarded checks to beneficiaries, either in a lump sum or in installments. The employer could designate classes of employees for inclusion and exclusion from the policy, and employees would be eligible for the plan only upon making application on forms furnished to the employer by Metropolitan.
The employer was to furnish to Metropolitan a record of all classes of employees it deemed eligible, the date of inclusion of each class, and the period of service required for eligibility under each class. The employer registered on index cards the names of all employees insured by Metropolitan, with the date the insurance became effective, the date it was discontinued, and any increase or decrease in the amount of coverage. Metropolitan could inspect these records and make reasonable requests for information about covered employees.
On September 3, 1969, the plaintiff and Woods separated, but they did not discuss any division of property until August, 1971, when Woods insisted on a divorce. At that time Woods told plaintiff she could have their home, one of the family cars, his three life insurance policies (the group policy, an Aetna policy and a G.I. policy). He rejected her only demand, which was that she not obtain a divorce.
On August 13, 1971, the couple met in the office of George J. Bagot, a lawyer whom plaintiff had retained on April 27, 1971. Woods was not represented by counsel at any time during the divorce proceedings. At that time, plaintiff filed a petition for divorce and the couple signed a property settlement (Stip. 7-Ex. 1), which states in part on page 5, paragraph 8, Exhibit 1:
"Defendant presently has policies of life insurance on his life in which plaintiff is named as beneficiary. Defendant agrees to have ownership of said policies transferred to plaintiff so that plaintiff will be the sole owner of said policies and also remain as the beneficiary. In such event, plaintiff agrees to continue to make payments of premiums on said policies. In the event that ownership cannot be transferred on some or all of said policies, defendant agrees to keep plaintiff as beneficiary on said policies. Plaintiff shall have the right at any time to discontinue making payment on the premiums on said policies or any of them, but only on notice to defendant, and in such event, defendant shall have the right to change the beneficiary."
On October 28, 1971, Woods and plaintiff met in Bagot's office and added a modification to paragraph 8 of the property settlement agreement (Ex. 2), and the second and third paragraphs of that agreement are as follows:
"With reference to the group policy of defendant issued through the defendant's employer, International Shoe Company, which presently provides coverage on defendant's life in the sum of $70,000.00, it is agreed that in the event the company in the future changes the group plan or has issued coverage under a new, different or substituted policy or plan, or with a different company, defendant will name plaintiff as owner of said policy and as beneficiary, with the children of the parties as contingent beneficiaries.
"Defendant agrees that on any of the policies now in existence in which plaintiff is named beneficiary, in the event ownership cannot be changed, defendant will not change or attempt to change the beneficiary as long as plaintiff is living, and in the event of her death, he will name the children of the parties as beneficiaries. This provision shall apply to all types of policies now in existence."
Woods also on October 28, 1971, executed an "Absolute Assignment" (Ex. 3), which designated plaintiff as the owner and beneficiary of Woods' group policy No. 7000G, which assignment required Interco and Metropolitan to sign the waiver and consent to the assignment.
Plaintiff's divorce from Woods was granted on October 29, 1971, and a decree incorporating the August 13th property settlement agreement and the October 28th *1311 modification was filed for record in the Circuit Court of St. Louis County, Missouri. It was stipulated that the decree of divorce entered by the Circuit Court of the County of St. Louis, Missouri, incorporates the stipulation (Ex. 1) and its modification (Ex. 2) as a part of the decree.
On November 7, 1971, Woods married the defendant Mrs. Woods.
On February 10, 1972, plaintiff's attorney, Bagot, wrote the defendant Metropolitan, transmitting the "Absolute Assignment" of the group policy to plaintiff. The letter (Ex. D) in part reads as follows:
"The above-named insured and beneficiary were formerly husband and wife, having been divorced in St. Louis County in October, 1971. As a part of the divorce settlement Mr. Woods agreed to assign to his wife ownership of his insurance policies.
"In compliance with that agreement, Mr. Woods has executed an absolute Assignment which I am enclosing herewith.
"I would appreciate it if you would process this at your earliest convenience and advise me when completed."
On February 18, 1972, Frank C. Jurgensmeyer, a group account executive of Metropolitan, sent the "Absolute Assignment" and Bagot's letter (Stip. 11) to R. E. Koopman, Manager of the Corporate Insurance Department of Interco. The letter of transmittal (Metropolitan's Ex. F) stated in part as follows:
"Enclosed is a copy of Mr. George J. Bagot's letter of February 10, 1972, together with an absolute assignment form G 1205 which has been completed by your employee, Mr. Robert W. Woods.
"Please have the waiver and consents section completed by an officer of Interco Incorporated and return the absolute assignment form together with Mr. Woods' certificate to me and I will arrange to have his request for the assignment of his Life Insurance processed in our Home Office."
After Koopman received this communication there were discussions at Interco as to whether the non-assignability provisions of the group policy should be waived. Koopman referred the matter to Wayne Patterson, an attorney of the International Shoe Division, for review.
On April 4, 1972, in a confidential memorandum (Deft. Woods Ex. A), not included in the insurance file, Patterson wrote Koopman that Interco should decline to waive the non-assignability provisions, and further quoted a part of the August 13th property settlement agreement and the October 28th modification. Patterson's memorandum further stated it had become a question as to how to construe the words and phrases used in the property settlement agreement and modification thereof, that he would prefer to be able to favor Woods in any reasonable way, and that Woods had told him that he would prefer to designate plaintiff as the beneficiary of the first $70,000.00 of the proceeds of the group policy and to add his new wife, Mrs. Woods, as beneficiary of the remainder. He further added that Woods knew that he didn't "own" and couldn't transfer ownership of the group policy, and that he believed the $70,000.00 figure was less than the insurance in effect on Woods.
On April 6, 1972, Koopman replied with a memorandum to Patterson, enclosing a proposed form that he hoped would solve the assignment problem. It designated plaintiff as beneficiary of the first $70,000.00 and Mrs. Woods as beneficiary of the increase in value over $70,000.00 (Woods Exs. B and C).
On April 11, 1972, Patterson sent to Koopman a slightly revised beneficiary designation to the same effect (Deft. Woods Ex. E).
On April 13, 1972, Koopman returned the "Absolute Assignment," unsigned, to Jurgensmeyer of Metropolitan, enclosing a draft of the proposed beneficiary designation. He asked Jurgensmeyer to review it, make any changes necessary, and return it to Interco so that it could be executed by Woods.
On April 20, 1972, Jurgensmeyer sent Patterson's draft to R. A. Patrey (Deft. Metropolitan Ex. I), who handled group customer relations at Metropolitan, and instructed *1312 him to prepare a special beneficiary designation form in accordance with Patterson's draft, indicating that the draft had been prepared in accordance with the property settlement agreement.
On May 2, 1972, Patrey returned the beneficiary designation to Jurgensmeyer, prepared as directed (Stip. 14).
Jurgensmeyer forwarded Patrey's draft of the beneficiary designation to Patterson at International Shoe on May 9, 1972, and enclosed the "Absolute Assignment" form, suggesting that it be returned to Woods. Woods executed the beneficiary assignment on the following day (Ex. 5). On May 10, 1972, Patterson wrote Jurgensmeyer (Metropolitan Ex. M) advising him that Woods would execute the new beneficiary designation, and suggesting that the "Absolute Assignment" be returned to Bagot, a copy of the letter being sent to Koopman.
On May 15, 1972, Jurgensmeyer returned the "Absolute Assignment" to Bagot, explaining that Interco had not consented to waive the non-assignability provisions of the policy. Although Woods' insurance file contained the beneficiary designation, the property settlement agreement, its modification, and the communications between Interco and Metropolitan were not entered in the file as they were considered confidential since they related to the divorce, this despite the fact that the property settlement agreement and its modification were published records (part of the divorce decree) at the Court House of St. Louis County.
On November 23, 1975, plaintiff married Joseph E. Glover. Woods, upon learning of the planned remarriage of plaintiff in late October of 1975, phoned the plaintiff and asked her to "let him off the hook" on the group insurance policy. He also asked her to let him know if she wished to keep his G. I. policy in force since he had had it for a long time. The plaintiff advised Woods she would think about it, and several days later, after examining the property settlement agreement, she wrote him a letter refusing to let him remove her as the beneficiary of the group policy. At the trial she testified she knew nothing of the designation on May 10, 1972, of Mrs. Woods as the beneficiary of the proceeds in excess of $70,000.00.
On October 31, 1975, Woods revoked his previous beneficiary designation and made defendant Mrs. Woods the sole beneficiary of all the proceeds of the group policy, with any children of the marriage as contingent beneficiaries.
During his last illness, on December 2, 1977, Woods wrote to Rolf DeLew, an attorney and vice president of Interco, requesting that the current rider on his group insurance reflect the increase in benefits attributable to his salary increase.
Defendant Mrs. Woods testified that later that month she overheard a telephone conversation between her husband and the attorney DeLew, during which her husband asked DeLew, "As long as I am going to die, Rolf, are you sure that my life insurance policy is all straight for Roberta?" After DeLew replied, Woods said, "That's good, but are you aware that Jeanne has taken the policy?" DeLew advised Woods to fill out a form asking for a replacement certificate and send it to him (DeLew) and he would see that a replacement certificate was issued.
On December 29, 1977, defendant Mrs. Woods requested the replacement certificate for Woods, alleging that it had been wrongfully withheld by plaintiff, and a new one was issued to him.
Mrs. Woods testified in her deposition that she did not question her husband as to the significance of the conversation with DeLew, and that she had never seen the property settlement agreement, although she did hear Woods say in August of 1971 that plaintiff "wanted everything," including his life insurance policies. She also remembered that some years before his death he brought home a rider on the group policy and told her to keep it in her safe deposit box, and that in his last illness he told her that she would receive the proceeds of the group policy.
Woods died on February 2, 1978. Mrs. Woods contacted DeLew and requested a proof of claim form, which Mrs. Woods received *1313 on February 7th from Rosemary Glueck, the Supervisor of Interco's Insurance Department, who was in charge of processing claims and forwarding claim checks to beneficiaries. Mrs. Woods filled out the proof of claim form and returned it with the proper exhibits to Interco on February 15th. On February 17, 1978, Glueck sent the proof of claim to Vi Reynolds of Metropolitan, who handled death claims for this region.
On February 6th, 1978, plaintiff's attorney in Florida wrote a letter to Metropolitan's New York office (Ex. 7), setting out the policy number and stating that Woods had died on February 2, 1978, and requested a claim form on the policy to be signed by plaintiff, who was his client. The insurance company did not respond to this letter.
On February 28, 1978, Metropolitan sent a check for $116,433.84 to International Shoe for Mrs. Woods, and she received it from International Shoe by letter on March 2nd, retained it intact, and invested it.
Metropolitan subsequently notified plaintiff that it was refusing to pay her because it had already paid defendant Mrs. Woods, who was the designated beneficiary.
The Court must first determine the effect of the property settlement agreement and its modification entered into between the plaintiff and Woods, and incorporated in their divorce decree, with respect to the question of who was the beneficiary of the group insurance policy in question.
The law is well settled in Missouri that a property settlement and divorce decree providing for a certain party to be named as beneficiary of a life insurance policy is valid and enforceable against anyone subsequently named.
In Prudential Ins. Co. of America v. Gibson, Mo.App., 421 S.W.2d 26, decided on almost identical facts to the case before the Court, it was held that the first wife's contract right as an irrevocable beneficiary was superior in equity to the second wife's rights as designated beneficiary under the policy. The contract converted the first wife's interest from a revocable one to a vested equitable interest which could not be divested without her consent. The second wife, whom the husband had no right to designate, was bound by her husband's contract with his former wife. Citing cases from other jurisdictions, the Court, on page 33, said:
"Considering the results which are deemed to flow from the finding of `vested equitable interest', it is plain that the holdings in these cases proceed upon the basis of a property concept and not simply upon breach of contract, that is, that the contracting first beneficiary, as between herself and the insured or a volunteer, acquires some kind of property interest in the res itself, namely, in the contractual promise made by the insurance company to pay so many dollars upon the death of the insured."
The Court further said at page 34:
"It is our considered opinion that the contracting first beneficiary, as between herself and the insured (or a volunteer), acquires a property interest in the subject policy which is superior to that of the insured or the volunteer."
In General American Life Ins. Co. v. Rogers, Mo.App., 539 S.W.2d 693, 697, the Court said:
"But this principle must be reconciled with the law in Missouri and elsewhere that where beneficiaries have a vested equitable interest or a property right in the proceeds of the policy by contract of the parties, that interest may not be defeated by an effort to change the beneficiaries without their consent. The law in Missouri and elsewhere is clear that a contract obligating the insured to maintain a present policy in full force and effect for the benefit of certain beneficiaries named pursuant to an agreement is valid and that the beneficiaries so named acquire a right in the proceeds of the policy which will be protected against subsequently named beneficiaries who have no superior right." (Citing cases.)
The only material respect in which the Gibson and Rogers cases are unlike the case before the Court is that the fund was interpleaded in those cases by the insurance companies, but the lack of an interpleader does not affect the plaintiff's rights.
*1314 The defendants point to the provision of the property settlement agreement wherein Woods agreed to have the ownership of the policies transferred to plaintiff so that plaintiff would be the owner of said policies and in such event the plaintiff agrees to continue to make the payment on the said policies, and contend that the plaintiff would be a beneficiary for life only if she paid the premium on the group policy.
The agreement was later modified and paragraph 3 of the modification specifically provided that "on any policy now in existence in which the plaintiff was named beneficiary in the event ownership cannot be changed defendants will not change or attempt to change the beneficiary as long as plaintiff is living."
Since it is contended that the property settlement agreement and its modification are ambiguous we turn to the Missouri law with respect to the construction of the agreement and its modification. In construing such agreements the Court in Gibson, supra, 421 S.W.2d at 31, said:
"It is elementary that where the words of a contract create an ambiguity then, in order to ascertain the intentions of the parties, resort must be had to the circumstances surrounding the formulation and execution of the contract, the relationship of the parties, the purpose to be served, and the course of negotiations, if any."
An examination of the property settlement agreement and the third paragraph of its modification, taken together with plaintiff's testimony that she understood that the policy in question could not be assigned, that her husband had assured her that she was to have the proceeds of all of his policies, the fact that that part of the premium which Woods was required to pay for the group policy could only be made by deductions from his paycheck (Stip. 18-A), the further fact that Woods repeatedly assured the plaintiff during the negotiations concerning the property settlement agreement with respect to the divorce that she was to have the proceeds of the three policies and would never have to worry financially and that he would never wish to make his second wife (Mrs. Woods) the beneficiary of the policies because she was financially independent, the testimony of Mrs. Woods that Woods told her in August before the divorce that his wife (plaintiff) was to have everything (including the life insurance), the further testimony of Bagot that the purpose of the modification was to provide that the plaintiff was to be the beneficiary for life even if any of the policies were not assignable, the testimony of plaintiff and Bagot that they did not realize that Woods was contributing to the payment of the premium on the policy in question, and plaintiff's testimony in her deposition that she was told by Woods that the insurance was provided by the company without cost, all lead the Court to the conclusion that it was not necessary for the plaintiff to pay the premiums on the policy in question for her to be a beneficiary for life, but that the property settlement agreement and its modification made her the beneficiary of the policy in question for life without payment of the premium on the group policy involved in this suit, an agreement that is recognized as enforceable under Missouri law.
The defendants' alternative contention that the property settlement agreement and its modification meant that the plaintiff would receive the first $70,000.00 and Mrs. Woods would be entitled to the rest of the policy is not supported by the record. Plaintiff testified in her deposition (pp. 36-37) that her husband told her she was to be the beneficiary of all increases in the value of the group policy. If Woods meant to give her only the first $70,000.00 why would he assign the whole policy to her with the subsequent increases corresponding to his salary? The $70,000.00 referred to in the settlement agreement was primarily to help describe the policy referred to.
Under the divorce decree, the property settlement agreement and its modification, the plaintiff was the beneficiary of the policy in question and is entitled to recover under Count I.
We turn now to Count II wherein the plaintiff seeks to recover from defendant *1315 Mrs. Woods the $116,000.00 (the policy proceeds) paid to Mrs. Woods by Metropolitan after the death of Woods and to have the proceeds of the policy held in trust for plaintiff's benefit, as well as judgment for that amount.
With respect to plaintiff's claim under Count II against Mrs. Woods the Court is faced with its decision as to Count I. Having found that Metropolitan is liable under Count I, the plaintiff's claim under Count II against Mrs. Woods must fail, as plaintiff cannot recover twice for the same claim. Borserine v. Maryland Casualty Co., 8th Cir., 112 F.2d 409, 416. In passing, however, the Court would add that had plaintiff failed to recover under Count I she would then be entitled to recover under Count II against the defendant Mrs. Woods. Perry v. Perry, Mo., 484 S.W.2d 257 (1972). The Missouri Supreme Court in Perry dealt with a set of facts very similar to the facts before this Court on Count II. Because of the Court's ruling under Count I the defendant Mrs. Woods, however, is entitled to a verdict under Count II.
Turning now to Metropolitan's crossclaim for restitution against Mrs. Woods for an amount equal to any judgment which might be rendered against it in favor of plaintiff under Count I, we must first determine whether the proceeds of the insurance policy were paid to Mrs. Woods by Metropolitan as the result of a mistake of law or a mistake of fact.
The distinction between a mistake of fact and a mistake of law is that a mistake of fact exists where one understands the fact to be other than it is, and a mistake of law exists when one knows the fact as it really is but has a mistaken belief of the legal consequences of that fact. In Burckhardt v. General American Life Insurance Company, Mo.App., 534 S.W.2d 67, the Court said:
"Whether the employer in a group insurance policy is, for any purpose, the agent of the insurance company issuing the group policy to the employer as policyholder for the benefits of the employee, is a question to be determined by the particular facts in each case."
As previously set out, the policy was self-administered by the employer. In addition to the fact that Interco, the agent of Metropolitan, was completely familiar with the divorce decree granted the plaintiff from Woods, which included the property settlement agreement and its modification, Metropolitan itself was advised by the plaintiff's attorney of the absolute assignment of the policy in question, and was advised on February 6, 1978, four days after Woods death, by letter from plaintiff's attorney (Ex. 7) that the plaintiff was the beneficiary of the policy in question, and the attorney also requested a claim form on the policy. Metropolitan did not respond to this letter, but instead, on February 28th, sent a check to Mrs. Woods, and then subsequently notified plaintiff that it was refusing to pay her because it had already paid the defendant Mrs. Woods.
The facts as heretofore set forth herein clearly indicate that the payment to Mrs. Woods was a mistake of law and not of fact. Metropolitan and its agent, Interco, had in their possession information that the plaintiff was the beneficiary of the policy under a divorce settlement agreement. In American Motors Ins. Co. v. Schrock, Mo.App., 447 S.W.2d 809, the Court in dealing with a somewhat similar payment on an insurance policy, at page 811, said:
"It is apparent from plaintiff's argument, as well as from the facts established in the record, that plaintiff paid defendant the policy benefits under a misconception of its legal duty * * * and that consequently the exception in question did not operate to relieve it from liability under all the circumstances then existing. That conclusion was necessarily reached either with full knowledge of all the facts pertaining to its liability under the insuring clause, and any relief therefrom *1316 afforded by the exemption clause-or at least with unlimited opportunity to so inform itself. Therefore, plaintiff's misconception of its policy obligation may not be considered to have been a mistake of fact, but instead, must be regarded as a mistake of law. * * *
"The rule of law is well settled that where money has been voluntarily paid with full knowledge of the facts it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person payingwhich is to say, under a mistake of law."
In Handly v. Lyons, Mo.App., 475 S.W.2d 451, 462-3, the Court said:
"The general rule relied upon by appellant executor (that equity will not relieve against a mistake of law) does not enjoy the high favor that courts accord the doctrine of restitution and is subject to numerous exceptions. The modern trend of judicial opinion is clearly in the direction of liberalizing the general rule denying relief from mistakes of law which, admittedly, is a harsh one. * * Whatever may be the status of the general rule, it is universally acknowledged that equity always relieves against a mistake of law when the surrounding facts raise an independent equity, as where the mistake is induced, or is accompanied by inequitable conduct of the other party. (Citing cases.) We quote the exceptive rule as it is stated in Pomeroy's Equity Jurisprudence, Fifth Ed., Sec. 847, p. 304:
"`Mistake of Law Accompanied with Inquitable Conduct of the Other Party. * * * When the mistake of law is pure and simple, the balance held by justice hangs even; but when the error is accompanied by an inequitable conduct of the other party, it inclines in favor of the one who is mistaken.'"
The facts in this case as set out heretofore in this opinion indicate that the error of mispayment in this case was not accompanied by any inequitable conduct on the part of Mrs. Woods. The actions Mrs. Woods took were the result of following the advice of Metropolitan's agent, Interco.
Metropolitan is not entitled to recover on its cross-claim and judgment will be entered in favor of Mrs. Woods on its cross-claim.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law, and the clerk of the Court will prepare and enter the proper order.

JUDGMENT
IT IS HEREBY ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of plaintiff, Jeanne B. Woods Glover, and against the defendant, Metropolitan Life Insurance Company, in the sum of One Hundred Sixteen Thousand ($116,000.00) dollars, with interest thereon at the rate of 6% per annum from February 28, 1978 to date of judgment, and interest thereafter at 9% per annum and costs on Count I of plaintiff's complaint;
IT IS FURTHER ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of the defendant, Roberta R. Woods, and against plaintiff, Jeanne B. Woods Glover, on Count II of plaintiff's complaint;
IT IS FURTHER ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of defendant, Roberta R. Woods and against the defendant, Metropolitan Life Insurance Company on its crossclaim.