HOOK, APPELLEE AND CROSS-
APPELLANT, *v.* HOOK, EXR.,
APPELLANT AND CROSS-APPELLEE,
ET AL.

(No. 51626—Decided
April 13, 1987.)

*Angela G. Carlin* and *Karen A.
Davey,* for appellee and cross-appellant.

*Tom L. Johnson* and *Charles Redmond,* for appellant and cross-appellee.

PRYATEL, P.J. This appeal arises from the judgment of the court of common pleas awarding plaintiff-appellee and cross-appellant Agnes Hook the proceeds of a life insurance policy.

Agnes (sixty) and Donal Hook (sixty-one) were married on December 23, 1970. Prior to their marriage, the parties entered into an antenuptial agreement. In *Hook* v. *Hook* (1982), 69 Ohio St. 2d 234, 23 O.O. 3d 239, 431 N.E. 2d 667, this agreement, which divested each party of any legal claim to the other's property, was found to be valid.

In August 1974, Donal filed a divorce action in DuPage County, Illinois. In her answer to his complaint, Agnes admitted the existence of the antenuptial agreement.[1] Eventually, this action was dismissed.

On June 27, 1977, Donal filed an action for divorce in Cuyahoga County. On July 26, 1977, Agnes filed her answer and counterclaim seeking divorce, alimony,[2] property division and a request for an *ex parte* temporary restraining order. She did not mention the (court-upheld) antenuptial agreement entered into on the morning of the marriage (in 1970). Upon the filing of her answer and counterclaim, a temporary restraining order was issued *ex parte* barring Donal, *inter alia,* from changing beneficiaries, and/or cashing in or allowing noted insurance policies to lapse. Among the seven insurance

---

[1] The Supreme Court in *Hook* noted that Agnes' failure to raise the question of the antenuptial agreement's validity in the Illinois case implied a willingness to abide by the agreement and a tacit admission that it was fair and reasonable.

[2] There was no claim for temporary alimony either in the Illinois divorce action in 1974 or in the divorce action filed in 1977.

policies which were the subject of the restraining order was the following:

"g. Unknown life insurance policies with unknown companies."

On August 2, 1977, Donal filed an answer to the counterclaim in which he set forth the affirmative defense that on December 23, 1970, an antenuptial agreement was entered into whereby Agnes waived any interest to Donal's assets. Donal attached a copy of the agreement.

At the time that the restraining order was issued, Donal was the owner and named insured on a life insurance policy (which reserved to him the right to change the beneficiary) issued by the United States government with Agnes the named beneficiary. In disregard of the temporary *ex parte* restraining order, on September 8, 1977, Donal changed the beneficiary from Agnes to his needy brother, Gerald Bliss Hook.

On September 12, 1977, Donal filed a motion for dissolution of the restraining order asserting that the antenuptial agreement entered into between the parties barred Agnes from any and all rights or interest in Donal's property.

A month and one half later (October 28, 1977), and prior to any court ruling on the dissolution of the *ex parte* restraining order, Donal died.[3]

On December 13, 1977, Gerald Bliss Hook, as the designated beneficiary under the decedent's insurance policy provided by the United States government, collected the sum of $38,956.06.[4]

On January 31, 1978, Agnes filed a claim against Donal's estate pursuant to R.C. 2117.06 seeking payment of the insurance proceeds. When this claim was rejected, Agnes filed a declaratory action in the common pleas court, which found that Agnes was the only named beneficiary legally entitled to the proceeds. The court held that any change of beneficiary was null and void while a temporary restraining order was in effect.

The court entered judgment for Agnes against the estate of Gerald Bliss Hook for the sum of $38,956.06, together with interest from the date of judgment plus costs.

The executor for the estate of Gerald Bliss Hook timely appeals. Agnes cross-appeals.

Assignment of Error

"I. The trial court committed prejudicial error by awarding the plaintiff-appellee a judgment for $38,956.06 against the estate of Gerald Bliss Hook, appellant, whose decedent was the beneficiary of an insurance policy in like amount on the life of plaintiff-appellee's late husband, Donal D. Hook, solely on the basis that said husband had changed the beneficiary of that insurance policy from his wife to his brother, Gerald, in violation of an *ex parte* restraining order during a pending divorce action."

Appellant contends that an action for divorce is an *in personam* action and that the death of Donal abated the divorce action. We agree. As the Supreme Court of Ohio has stated in *Porter* v. *Lerch* (1934), 129 Ohio St. 47, 56, 1 O.O. 356, 360, 193 N.E. 766, 770:

"* * * it stands to reason that

---

[3] Under the terms of Donal's will, Agnes did not receive any part of his estate. Donal's will reads in relevant part:

"*Item I.*

"I am married to Agnes Bates Hook, but having entered into an antenuptial agreement with my wife, Agnes Bates Hook, on the 23rd of December 1970, I in-tentionally make no provision herein for her under this will since she has a substantial estate in her own right."

[4] On March 1, 1984 (during the pendency of this suit), Gerald Bliss Hook died. The executor of his estate was substituted as a party defendant.

where one or both parties to a divorce action die before a final decree of divorce the action abates and there can be no revival. * * * 9 Ruling Case Law, 414, 415, Section 214. * * *"

"Such rationale rests upon the premise that the object sought to be accomplished by the final decree, to wit, the dissolution of the marriage relation, is already accomplished by the prior death. See [*Porter, supra*]; Annotation (1936), 104 A.L.R. 654." *Miller* v. *Trapp* (1984), 20 Ohio App. 3d 191, 192, 20 OBR 235, 237, 485 N.E. 2d 738, 739.

However, appellee maintains that an action for divorce and division of property does not *require* abatement upon the death of a party prior to the entry of the decree; rather, the court is vested with the discretion to either dismiss the action or to enter judgment *nunc pro tunc.* See *id.* at the syllabus. An examination of *Miller* reveals that the trial court had heard the evidence before granting the wife a divorce. In *Miller* the decision entry memorandum had been filed prior to the death of the wife; all that remained was the entry of the final decree.

In the instant case, the court had not heard any evidence upon which it could adjudicate the matter; in fact, the divorce action had commenced just four months before Donal's death. (The action was filed June 27, 1977 and Donal died October 28, 1977.) No evidence had been adduced, and since "the dissolution was already accomplished by death," the domestic relations court properly dismissed the action on November 1, 1977.

Appellee next directs our attention to *Candler* v. *Donaldson* (C.A. 6, 1959), 272 F. 2d 374, which she characterizes as "most analogous to the instant case." Drawing on her brief, we learn that Wheaton Candler, the deceased-insured, was a party to a divorce action and his wife, the beneficiary of a

$10,000 insurance policy. In the divorce proceedings, the trial court issued a temporary restraining order which barred the insured-husband from " 'in any manner disposing of any of the properties and assets of either or both of the parties * * *.' " *Id.* at 376. Notwithstanding such order, the insured-husband executed a change of beneficiary on his life insurance by removing his wife and substituting his mother as the beneficiary. After the change was recorded and prior to the resolution of the divorce action, the insured died. Claims for insurance proceeds, by interpleader, were submitted both by the decedent's spouse and mother.

The United States District Court for the Eastern District of Michigan, relying on *New York Life Ins. Co.* v. *Cook* (1927), 237 Mich. 303, 211 N.W. 648, held that a wife has no interest in the insurance policy on the life of her husband merely by reason of the fact that she was the named beneficiary thereon and that, accordingly, the insured has the right to change the beneficiary while a divorce suit, brought by him, is pending and where his death intervenes before the entry of the decree.

Accordingly, the trial court found that the mother was entitled to the insurance proceeds since the wife had no vested interest in the insurance policy.

In reversing the lower court, the United States Court of Appeals for the Sixth Circuit found that although the husband has a right to change the beneficiary under the terms of the insurance policy, equities may arise in favor of the wife as named beneficiary, which would deny the husband the right to so change the beneficiary of such policy.

We find these facts recited by appellee from *Candler* ignore additional evidence that formed the basis of the appellate reversal. A careful reading of

the case reveals the following additional facts. A child (William Wallace Candler) was born September 20, 1955. On November 7, 1956, Wheaton filed a divorce action. On November 27, 1956, Margery filed a petition for temporary alimony. Following a hearing, the court ordered (1) that Wheaton pay Margery $30 per week during pendency of the action for her and the child's support and maintenance; (2) that Margery have continued use of the family home and furnishings; (3) that Wheaton pay all (a) utility bills and (b) other expenses for the use and enjoyment of the house; (4) that Wheaton continue in force (a) all life insurance policies, (b) auto insurance policies, and (c) policies pertaining to real estate and personal property, and lastly, (5) that Wheaton be restrained from disposing of property therein mentioned until final adjudication. Nevertheless, Wheaton changed the beneficiary from Margery to his mother (Louise Donaldson).

Wheaton died August 21, 1957 and the obligations of maintenance and support of Margery and their son, the expenses of the family home and furnishings, utility bills, and maintenance of life and other insurance policies were thrust upon Margery.

By defying the restraining order (prohibiting him from changing the beneficiary) issued after a hearing, Wheaton deprived and defrauded his family of the obligations of sustenance, etc. that the court imposed upon him that would have been met by the proceeds of the life insurance policy. In short, equities had arisen on the life insurance contract in favor of Margery and their son.

Based on these additional facts, we accept as sound law the appellate court's finding that equities had developed that prohibited the husband from changing the beneficiary.

In reviewing the *Candler* proceedings we find it more inapposite than analogous to the instant case where (1) no order of support or maintenance (or comparable order) was issued, and (2) an antenuptial agreement had been entered into which provided that "each party hereto may freely sell or otherwise dispose of any or all of his property, now owned or hereafter acquired, by gift, sale or deed, during life, or by Last Will and Testament."

Hence, we find no equities here that arose in Agnes' favor. As the antenuptial agreement provided:

"Each party is hereby barred from * * * all rights * * * or claims as widow * * *, heir, * * *, survivor, or next of kin, and *all* other rights or claims whatsoever, * * * which may, *in any manner*, arise * * * by virtue of said marriage." (Emphasis added.)

Other cases cited by appellee are equally inapposite. In these cases the husband changed the name of the beneficiary in violation of a valid divorce decree which imposed equitable interests. The courts set aside the change, ruling that the court's order in effect created a vested interest in the named beneficiary which could not be altered by the insured. See *Campbell* v. *Prudential Ins. Co. of America* (App. 1955), 73 Ohio Law Abs. 262, 137 N.E. 2d 515; *Bank One Trust Co.* v. *Transamerica Life Ins. Corp.* (1982), 5 Ohio App. 3d 236, 5 OBR 523, 451 N.E. 2d 542.

We conclude that the divorce action was abated by the death of Donal (*Porter* v. *Lerch, supra*) which also extinguished the *ex parte* restraining order against him. (Had Donal lived, he would have been subject to a citation for contempt at which hearing he could assert [in mitigation] the antenuptial agreement of which the court was unaware.)

In view of the lower court's finding that plaintiff failed to establish that

defendant conspired to defraud her,[5] and in the absence of a vested or equitable interest that arose or existed (in the appellee), we find for the appellant-executor and render him final judgment.

While our holding makes moot and dicta cross-appellant's assignments of error, in compliance with App. R. 12 (A) we hold as follows:

Cross-Assignment of Error No. I

"I.   Whether the trial court erred in awarding interest to run from [the] date of judgment as opposed to awarding interest to run from the date the proceeds of life insurance were wrongfully received."

Generally, where money is due under a contract which stipulates the amount to be paid, interest accrues from the time that the money due should have been paid. *Shawhan* v. *Van Nest* (1874), 25 Ohio St. 490, 18 Am. Rep. 313. Where the amount of the debt is clear, but the only issue raised is whether the plaintiff is entitled thereto, interest runs on the debt from the time that it was due and payable, as found by the court. *Braverman* v. *Spriggs* (1980), 68 Ohio App. 2d 58, 60, 22 O.O. 3d 47, 48, 426 N.E. 2d 526, 527.

In the instant case, the debt was not due and payable until the court determined who owned the right to the proceeds. Therefore, the debt was not found due and owing until final judgment was rendered by the court.

Cross-appellant maintains that a life insurance policy is an "instrument of writing" within the meaning of R.C. 1343.03.[6] However, this insurance contract was between Donal, as the insured, and the insurance company (rather than between Agnes and Donal). Nor was it due or payable until the court issued its decree.

Lastly, cross-appellant argues that Gerald Bliss Hook wrongfully converted the insurance proceeds and, hence, she is entitled to interest from the date of conversion (*i.e.,* December 13, 1977, the date Gerald Bliss Hook received the funds).

We find that a wrongful conversion did not take place. Gerald Bliss Hook's name appeared as beneficiary on the insurance contract by no act of his own. The insurance company in accord with the contract paid the proceeds to the named beneficiary. It was only when the court incorrectly determined that Agnes, in effect, had a vested interest and awarded the proceeds to Agnes that she was entitled to the money. Accordingly, this first cross-assignment of error is without merit.

Cross-Assignment of Error No. II

"II.   Whether the trial court erred in rendering judgment against the estate of Gerald Bliss Hook only as opposed to rendering judgment against both the estate of Gerald Bliss Hook and the estate of Donal D. Hook."

Cross-appellant contends that since R.C. 1343.03 entitled her to prejudgment interest and that since the estate of Gerald Bliss Hook is not large enough for such an award that Donal's estate should be held jointly liable so that she can collect the prejudgment

---

[5] This finding was not cross-appealed.

[6] R.C. 1343.03(A) provides in pertinent part:

"* * * when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more * * *."

interest. Agnes fails to cite any authority for her position.

In light of our disposition that Agnes is not entitled to any prejudgment interest, this cross-assignment of error is overruled.

Cross-Assignment of Error No. III

"III. Whether the trial court erred in failing to award appellee/cross-appellant attorney fees in action to recover property wrongfully converted."

Having already determined that this case does not involve a wrongful conversion, we find the trial court did not err in failing to award attorney fees. This cross-assignment of error is overruled.

This cause is reversed and final judgment is entered for appellant.

*Judgment reversed.*

ECONOMUS, J., concurs.

DAVID T. MATIA, J., dissents.

PETER C. ECONOMUS, J., of the Mahoning County Court of Common Pleas, sitting by assignment.

DAVID T. MATIA, J., dissenting. With all due respect, relative to Assignment of Error No. I, I dissent from the majority opinion reversing the judgment of the court of common pleas awarding Agnes Hook the proceeds of a life insurance policy on her deceased spouse, Donal Hook.

Agnes Hook (plaintiff-appellee/cross-appellant) and Donal Hook were married on December 23, 1970. Immediately before the ceremony, the parties executed an antenuptial agreement which mutually divested each one of the legal claims to the other's estate. On February 8, 1971, Donal Hook designated Agnes Hook as beneficiary under a life insurance policy on his life provided through his employment with the United States government. Suit for divorce was filed in Cuyahoga County by Donal Hook in June 1977. The domestic relations court on July 26, 1977, pursuant to Agnes Hook's answer and counterclaim, issued a temporary restraining order prohibiting Donal Hook from changing beneficiaries on his insurance policies and/or cashing in or allowing any insurance policies to lapse. The order listed some policies by name and also included "unknown life insurance policies with unknown companies," which included his employment insurance policy, the insurance policy which is at the root of this appeal. This action was still pending at the time of Donal Hook's death on October 28, 1977. The temporary restraining order preventing Donal Hook from changing the beneficiaries on any of his insurance policies was undissolved on the date of his death. In direct violation of such restraining order and in contempt of a court's order, Donal Hook changed the named beneficiary on his insurance policy provided through his employment, from Agnes Hook to his brother, Gerald Hook. After Donal Hook's death, on December 13, 1977, the proceeds of said policy, $38,956.06, were paid to Gerald Hook. On January 31, 1978, Agnes Hook filed a claim against the estate of Donal Hook under R.C. 2117.06, seeking payment of the insurance proceeds which were paid to Gerald Hook. Upon rejection of her claim, Agnes Hook commenced this action to recover said proceeds and prejudgment interest against the executors of the estates of Donal Hook and Gerald Hook. During the pendency of this case, Gerald Hook died on March 1, 1984, and Agnes Hook moved to have the executor of the estate of Gerald Hook substituted as a party defendant, which motion was granted by the trial court. The trial court rendered judgment in favor of Agnes Hook in the amount of $38,956.06 against the

estate of Gerald Hook only, with interest to run from the date of judgment.

Upon a hearing on plaintiff's complaint, the trial court held that the antenuptial agreement had no bearing upon the case at bar, that regardless of the possible outcome of the divorce proceeding, a valid temporary restraining order was violated on September 8, 1977, and the proceeds of the subject insurance policy were paid to a beneficiary other than Agnes Hook, whose position as a beneficiary was supposedly ensured by the restraining order. The trial court described Agnes Hook's interest as a conditional expectancy interest in the insurance proceeds and that her position as such beneficiary was solidified by the domestic relations court's order of July 26, 1977.

Given the equity powers of the common pleas court and recognizing that a remedy at law in the form of contempt proceedings against a deceased defendant who violated the restraining order was no longer available, the change of beneficiary, while the restraining order was in effect, was rendered null and void and Agnes Hook was the only named beneficiary entitled to the insurance proceeds.

I agree with the trial court's position. The existence of or interpretation of the provisions of the antenuptial agreement are irrelevant to the issue of whether Donal Hook could violate a valid temporary restraining order to defeat Agnes Hook's interest in the insurance policy proceeds.

A fact which appears to be overlooked by the majority is that Donal Hook named Agnes Hook as a beneficiary on the subject policy on February 8, 1971, after the execution of the antenuptial agreement and marriage on December 23, 1970. Donal Hook had the right and ability to name his wife as the beneficiary notwithstanding the provisions of the antenuptial agree-

ment. Defendant-appellant has argued that the antenuptial agreement provided that "each party hereto may freely sell or otherwise dispose of any or all of his property, now owned or hereafter acquired, by gift, sale or deed, during life, or by Last Will and Testament." Donal Hook obviously chose to "freely" name Agnes Hook as a beneficiary on his insurance policy after the marriage and execution of the antenuptial agreement. He had retained this right and he chose to exercise this right to benefit his wife, Agnes Hook.

Further, the fact that the antenuptial agreement provides that "each party is hereby barred from * * * all rights * * * or claims as widow * * *, heir, * * * survivor, or next of kin, and *all* other rights or claims whatsoever, * * * which may, *in any manner,* arise * * * by virtue of said marriage" (emphasis added) would not prevent Agnes Hook from receiving the proceeds of an insurance policy on Donal Hook's life when Donal Hook, pursuant to the change of beneficiary, entered into a contract on February 8, 1971, with the insurance company, to pay the proceeds to Agnes Hook at his death. Such right of Agnes Hook to receive the proceeds of this policy as the named beneficiary of her husband should not be defeated by the wrongful act of her husband, when Donal Hook was later restrained by a valid court order in a divorce proceeding from changing the beneficiary on this policy.

This court is well aware that the Ohio Supreme Court in *Hook* v. *Hook* (1982), 69 Ohio St. 2d 234, 23 O.O. 3d 239, 431 N.E. 2d 667, found this agreement to be a valid bar to Agnes Hook's inheriting any property from her deceased husband's estate.

A careful review of the antenuptial agreement makes it evident that there are no provisions therein pertaining to a divorce of the parties and the subsequent division of property. Before the

Ohio Supreme Court's decision in *Gross* v. *Gross* (1984), 11 Ohio St. 3d 99, 11 OBR 400, 464 N.E. 3d 500, as in the majority of jurisdictions including Ohio, prospective spouses could only contract as to the division of their property at the death of one of the parties and the antenuptial agreements were generally enforced if the parties made a full disclosure of their assets and there was no showing of fraud, duress, or undue influence. Such agreements were generally recognized as being conducive to marital harmony. The validity of provisions in antenuptial agreements pertaining to a division of property and settlement of marital rights was one of first impression before the Ohio Supreme Court in 1984 in the *Gross* case. At the time the *Hook* antenuptial agreement was executed in 1970, the prevailing law in Ohio was that if such contract provided for a division of property and sustenance alimony upon the divorce of the parties, it was considered as being made in anticipation of divorce and held to be against public policy. Annotation (1931), 70 A.L.R. 826; Annotation (1935), 98 A.L.R. 533. The Supreme Court in *Gross* in 1984 changed the law of Ohio and held that an antenuptial agreement containing provisions for disposition of property and setting forth amounts to be paid as sustenance alimony upon a subsequent divorce of the parties was not against public policy so long as the agreement was entered into freely and without fraud or duress and upon full disclosure. The Ohio Supreme Court further held that in a later judicial review of the agreement in a subsequent divorce proceeding, the sustenance alimony provisions had to meet an additional test of conscionability at the time of the divorce.

Thus, notwithstanding the rights which Agnes Hook did retain or release in the antenuptial agreement executed before her marriage, in the subsequent divorce action brought by her husband wherein she filed an answer, counterclaim for divorce, and a request for reasonable alimony and division of the property owned by the parties, once Donal Hook named her as a beneficiary on the subject policy, and once he was restrained by a valid restraining order from changing that beneficiary, Agnes Hook had a property interest in the subject insurance policy which was not affected by the antenuptial agreement nor could be defeated by the action in contempt of Donal Hook ignoring a valid restraining order.

Appellant's argument that the divorce action was an *in personam* action which abated on Donal Hook's death is of little consequence to the real issue here: whether or not Gerald Hook (or his estate) should remain the possessor of the insurance policy proceeds as a result of Donal Hook's violations of a court order. Equity considers as done that which ought to be done and here the common pleas court rightfully returned the insurance proceeds to Agnes Hook, the named beneficiary protected by the temporary restraining order prohibiting Donal Hook from changing said beneficiary on his insurance policy.

I differ from the interpretation of the majority relative to *Candler* v. *Donaldson* (C.A. 6, 1959), 272 F. 2d 374. It appears that Ohio courts have not dealt specifically with the question of the rights of a surviving spouse named as beneficiary on an insured-husband's life insurance policy after he violates a temporary restraining order granted in a divorce proceeding prohibiting him from changing the beneficiary and where he dies before final adjudication of the parties' property rights. The *Candler* case is pertinent to the case at bar. The majority gives undue weight to the fact that the widow of the deceased-insured had a child to

support, and that the widow had been granted a temporary alimony and child support award. The majority accepted the finding of the United States Court of Appeals based primarily on the equities that had developed which prohibited the husband from changing the beneficiary. However, a close scrutiny of the decision in *Candler* reveals that the United States Court of Appeals overturned the district court's ruling in favor of the decedent's mother not only because of the equities in favor of the widow and son, but because the deceased husband had violated a temporary restraining order directing him to continue in force life insurance policies and be restrained from " '* * * assigning * * * or otherwise disposing of the property' " until a final adjudication of the interests of the parties. *Id.* at 377. In the present case, Donal Hook was specifically restrained from *changing the beneficiary* on all insurance policies. In *Candler,* the United States Court of Appeals declared that the restraining order directing the husband relative to the insurance policies had for its purpose the preservation of the *status quo* between the parties to the divorce action, until a final adjudication of the parties' property rights could be made. This was also the purpose of the restraining order in the case at bar. It is immaterial to the effect of the restraining order whether it was obtained by the wife pursuant to a petition for temporary alimony and to a cross-bill for a divorce as in *Candler* or pursuant to an answer or counterclaim by the wife as in the case at bar — the effect is the same — the insured-husband was restrained from changing the beneficiary on his policies from the wife to a third party. In *Candler,* the trial court had ruled that the wife had no vested interest in the policy merely by being named as beneficiary which would overcome the husband's right to change the beneficiary while a divorce

suit was pending and where his death intervened before the entry of a decree, especially where the injunction directed against the husband did not specifically restrain him from changing the beneficiary. Further, the trial court held that it was not privileged to conjecture as to whether or not the proceeds of the policy would have been decreed to the wife in the final hearing. In reversing, the United States Court of Appeals held that the wife's interest in the policy was more than a mere contingent interest, that although the husband had a right to change the beneficiary reserved in the policy, certain equities had arisen in the named beneficiary's favor which denied the insured such right, and that the restraining order prohibiting the insured from "otherwise disposing" of the policies restrained him from changing the beneficiary. The fact that the new beneficiary, insured-husband's mother, was a pure donee beneficiary without any offsetting equities of her own, in addition to the violation of the court order by the insured-husband, weighed heavily with the appellate court.

In the instant case, the new beneficiary, Gerald Hook, brother of Donal Hook, is a pure donee beneficiary with no offsetting equities of his own. Although the majority refers to him as "needy," such fact was not included in the *Stipulation of Facts* of the parties. Agnes Hook was approximately sixty-seven years old at the time of Donal Hook's death. By obtaining a restraining order to prevent her husband from removing her as the named beneficiary on his policy, she attempted to ensure the *status quo* until a final adjudication of her property rights in the divorce proceeding. The antenuptial agreement in question would not have prevented a domestic relations court from awarding her reasonable alimony pursuant to her request in her counterclaim, nor from considering the prop-

erty rights of the parties in the subject insurance policy.

On the facts in this case, there were no equities of Gerald Hook which would have overcome the equities in favor of Agnes Hook.

I, therefore, respectfully dissent from the majority and would affirm the decision of the trial court awarding the proceeds of the insurance policy, $38,956.06, to Agnes Hook.

Relative to Cross-Assignment of Error No. I, I dissent from the majority. Since I would affirm the decision of the trial court in awarding the proceeds of the policy on the life of Donal Hook to Agnes Hook, his surviving spouse, I would, of necessity, rule that interest is to run, to the benefit of Agnes Hook, from the date the proceeds of life insurance were wrongfully received by Gerald Hook, December 13, 1977, and not from the date of the trial court's judgment.

The parties agreed in the *Stipulation of Facts* that the amount paid Gerald Hook on December 13, 1977, was $38,956.06. The amount of the debt is thus liquidated and readily ascertainable. Pursuant to the contract between Donal Hook and the insurance company, the proceeds of the policy were payable on his date of death, *i.e.,* October 28, 1977, to his beneficiary and were in fact received by Gerald Hook on December 13, 1977, due to a change of beneficiary from Agnes Hook to Gerald Hook by Donal Hook on September 8, 1977, in direct violation of a temporary restraining order issued by the Cuyahoga County Court of Common Pleas on July 26, 1977. The fact that the estates of Donal Hook and Gerald Hook have denied owing the proceeds to Agnes Hook does not delay the running of interest on the debt. *Braverman* v. *Spriggs* (1980), 69 Ohio App. 2d 58, 60, 22 O.O. 3d 47, 48, 426 N.E. 2d 526, 527.

R.C. 1343.03 provides that when money becomes due and payable upon any bond, bill, note or "other instrument of writing, * * * the creditor is entitled to interest at the rate of ten per cent per annum * * *."

An insurance policy is included in the statutory phrase "other instrument of writing." *Clevenger* v. *Westfield Companies* (1978), 60 Ohio App. 2d 1, 14 O.O. 3d 3, 395 N.E. 2d 377, paragraph one of the syllabus.

It is immaterial that the insurance contract was between Donal Hook and the insurance company and not between Donal Hook and Agnes Hook. Agnes Hook was named beneficiary on said policy by Donal Hook on February 8, 1971, and had Donal Hook not changed the beneficiary to Gerald Hook in violation of a court order on September 8, 1977, Agnes Hook would have received the proceeds of the policy at Donal Hook's death on October 28, 1977. Accordingly, I dissent from the majority and would hold that the first cross-assignment of error is with merit.

As to Cross-Assignment of Error No. II, I dissent from the opinion of the majority due to my dissent relative to Assignment of Error No. I and Cross-Assignment of Error No. I. The trial court rendered judgment against only the estate of Gerald Hook. It would be illogical and inequitable to hold that Agnes Hook is entitled to the proceeds of an insurance policy which were paid to Gerald Hook by the wrongful act of Donal Hook in violation of a court order, to order interest paid to Agnes Hook thereon pursuant to R.C. 1343.03, and then not to make Agnes Hook whole by rendering judgment against only the estate of Gerald Hook as opposed to rendering judgment also against the estate of Donal Hook in joint and several liability for the proceeds and interest due as determined earlier. It would also be inequitable to allow the beneficiaries of the estate of

Donal Hook to benefit, to the detriment of Agnes Hook, from the wrongdoing of Donal Hook in violating, during his lifetime, a temporary restraining order. Equity does not allow a wrongdoer to profit from his misdeeds.

Therefore, Cross-Assignment of Error No. II is with merit.

As to Cross-Assignment of Error No. III, I agree with the majority that since this case does not involve a wrongful conversion of property (by Gerald Hook), the trial court did not err in failing to award attorney fees to Agnes Hook, plaintiff-appellee/cross-appellant. Cross-Assignment of Error No. III is properly overruled.