Thomas, f.k.a. Studley, Appellee and Cross-Appellant, v. Studley, Appellant and Cross-Appellee, et al.

(No. 54919—Decided February 2, 1989.)

*Marshall J. Wolf* and *Deborah R. Akers,* for appellee and cross-appellant.

*Leon A. Weiss* and *Victoria M. Pohlman,* for appellant and cross-appellee.

PATTON, P.J. The estate[1] of husband John Studley appeals from a judgment of the domestic relations court that found Studley had violated a separation agreement in which he was to provide continuing life insurance to his minor child. The child's mother/legal guardian cross-appeals from that same order contending that the court erred in its conclusion concerning which insurance policies were contemplated by the separation agreement.

Pursuant to a 1975 separation agreement later reduced to judgment, the husband agreed to keep two life insurance policies issued on his life in full force and effect with the parties' child as the primary, irrevocable beneficiary of those policies. Following the divorce, the husband failed to name the child as beneficiary on one of the policies; instead he named his parents as beneficiaries.[2] That policy was a group life policy provided by Merrill-Lynch, his employer at the time of divorce. The policy would pay three times the husband's current salary at the time of death. At that time, husband was earning $14,400 per year.

In 1982, husband became em-

---

[1] The parties below included the husband's parents (one of whom is now deceased), and the executrix of the husband's estate. While the executrix is not a party to this appeal, we will refer to the appellant as "the estate" in order to simplify reference to the parties.

[2] The other policy, issued in a face amount of $10,000, has been paid to the child and is not at issue in this appeal.

ployed by Kidder, Peabody, Inc. He cancelled the Merrill-Lynch policy and obtained similar group insurance with the new employer. That insurance also named the parents, not the child, as beneficiaries. When the husband died in 1982, he was earning $68,926.12. In addition, there were three other life insurance policies on the husband's life at the time of his death—two group life policies and a business travel accident policy.

Following the husband's death, the wife filed a show cause motion after it became apparent that the husband had failed to name the child as beneficiary of the policies. The husband's parents and the executrix of the estate were named as party-defendants. The estate filed a motion for summary judgment, asserting that the separation agreement reduced to judgment was ambiguous when compared to the in-court agreement. A summary judgment rendered in favor of the estate was subsequently reversed by this court in *Studley* v. *Studley* (1986), 32 Ohio App. 3d 1, 513 N.E. 2d 811. This court held that the child's irrevocable rights to the father's life insurance could not be defeated by the father's subsequent purchase of new life insurance. *Id.* at 3-4, 513 N.E. 2d at 814. This court remanded for a review of the policies and a determination of their potential proceeds, if any. *Id.* at 4, 513 N.E. 2d at 814.

On remand to the domestic relations court, the issues were tried before a referee. The referee found that there were two identifiable life insurance policies in effect at the time of the divorce. The policy at issue had at least a $43,200 face value at the time.[3] The husband also had accidental death and business travel accident insurance in effect on his life through Merrill-Lynch. The referee concluded that the child was only entitled to receive the proceeds of the group life insurance policy in effect at the time of the divorce, in an amount equal to three times the husband's salary at the time of his death. Therefore, the referee recommended that the child receive from the estate[4] the sum of $206,778.36, with statutory interest of $80,558.76, for a total of $287,337.12. The referee also recommended that the child collect $23,277.99 in attorney fees. These findings were approved and judgment was rendered accordingly.

The estate assigns the following errors:

"I. The trial court erred in ordering that appellant pay to appellee-cross-appellant, as guardian for the minor child, the sum of $206,778.36, representing insurance proceeds allegedly owing to appellee-cross-appellant under the involved Merrill-Lynch contributory group life insurance policy, because such order is contrary to the law and evidence presented.

"II. The trial court erred in ordering appellant to pay to appellee-cross-appellant the sum of $80,558.76, representing statutory interest on the group life and supplemental group life insurance proceeds from the date of

---

[3] The estate argues that the referee erred in concluding that the husband's salary at the time of divorce was $14,400 annually. Given our disposition of the legal issues relating to that fact, we need not decide if that conclusion was erroneous.

[4] The referee recommended that a constructive trust be imposed on the proceeds of the insurance policy. See *Ferguson* v. *Owens* (1984), 9 Ohio St. 3d 223, 9 OBR 565, 459 N.E. 2d 1293; *Kelly* v. *Medical Life Ins. Co.* (1987), 31 Ohio St. 3d 130, 31 OBR 289, 509 N.E. 2d 411, paragraph two of the syllabus.

their respective receipts, January 31, 1983 and March 9, 1983, through January 21, 1987, the date of the hearing on remand, because the debt to appellee-cross-appellant was not legally due and owing until November 20, 1987, the date on which the trial court entered final judgment.

"III. The trial court erred in finding the defendant in contempt for failure to comply with the prior court order, because the remedy of contempt against a deceased defendant is not available.

"IV. The trial court erred in failing to order that appellee-cross-appellant, as guardian of Holly Studley, be required to reimburse appellant for the proportionate amount of federal estate tax paid, as such proceeds bear to the sum of John Studley's taxable estate, where appellant paid the entire amount of such federal estate tax assessed against the estate of John R. Studley.

"V. The trial court erred in ordering appellant to pay to appellee-cross-appellant the sum of $23,277.99 toward appellee-cross-appellant's attorney fees and expenses."

The mother, on behalf of the child, asserts the following cross-assignments of error:

"I. The trial court erred to the prejudice of appellee/cross appellant in failing to award her proceeds of the several policies of insurance upon the life of John Studley in effect as of the date of divorce.

"II. The trial court erred to the prejudice of appellee/cross-appellant in failing to award her all of the proceeds of the substituted life insurance policy."

### I

In its first assigned error, the estate presents several arguments in support of its contention that the trial court erred in awarding the child insurance proceeds equal to the entire amount of the husband's group life policy at the time of this death, rather than an amount equal to three times the husband's salary at the time of divorce.

The mother contends that we should reject any argument on the subject of the insurance proceeds since those contentions were addressed in our prior decision in this case and are therefore barred by the doctrine· of "law of the case." We reject this contention.

The doctrine provides that "* * * the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * *" *Nolan* v. *Nolan* (1984), 11 Ohio St. 3d 1, 3, 11 OBR 1, 3, 462 N.E. 2d 410, 412. When a reviewing court remands for a rehearing, the lower court is bound to adhere to the higher court's determination of the applicable law when it is confronted with substantially the same facts and issues as involved in the prior appeal. *Id.* at 3, 11 OBR at 3, 462 N.E. 2d at 412. *Hawley* v. *Ritley* (1988), 35 Ohio St. 3d 157, 160, 519 N.E. 2d 390, 393. A review of the issues raised in the separate appeals readily demonstrates that the issues involved are separate and distinct and that the law applied in the first appeal does not control the trial court's judgment on remand.

The first appeal involved an issue concerning what insurance the husband was required to maintain for the child. The court held that there were material facts at issue as to which insurance polices were in effect at the time of the separation agreement and the amount of potential proceeds from those policies, if any. *Studley* v. *Studley, supra,* at 4, 513 N.E. 2d at 814. The court's statements to the effect that it would have found an abuse

of discretion even if the only issues were the interpretation of an ambiguous journal entry were merely dicta. Moreover, even if that dicta were binding, it did not serve to resolve issues raised in light of the lower court's holding that the child held an equitable interest in the proceeds. Accordingly, the doctrine of the law of the case does not apply.

A

The estate first argues that the court erred in awarding the child three times the husband's salary at the time of his death. The estate contends that the husband's salary at the time of divorce should have been used to compute the child's share of the insurance proceeds. To our knowledge, this issue has not been raised in this state; however, we find persuasive authority from other jurisdictions that leads us to reject this argument.

The relevant part of the separation agreement provided:

"IT IS FURTHER Ordered, Adjudged and Decreed that in accordance with the Agreement of the parties concerning several policies of insurance issued upon defendant's life which remain in full force and effect that the husband shall designate forthwith and thereafter maintain the child of the parties as primary, irrevocable beneficiary in said policies. The husband shall keep or cause to be kept said policies of insurance in full force and effect, free and clear of any additional encumbrances and he shall not transfer or assign said policies or any interest therein. With respect to a presently existing $500 loan against one of said insurance policies, the husband is ordered to pay said loan according to its terms and hold his wife and child harmless thereon."

Under the terms of the separation agreement, the child was granted a vested right to the "several policies" of insurance. The trial court concluded that the only policy in question under the separation agreement was the husband's group life policy provided by his then-employer, Merrill-Lynch.[5] Having found a vested right, the trial court imposed a constructive trust on the proceeds of the group life policy paid to the estate. See *Ferguson* v. *Owens* (1984), 9 Ohio St. 3d 223, 9 OBR 565, 459 N.E. 2d 1293; *Kelly* v. *Medical Life Ins. Co.* (1987), 31 Ohio St. 3d 130, 31 OBR 289, 509 N.E. 2d 411. This vested right cannot be defeated by the husband's failure to maintain the group life policy as required by the divorce decree. As stated in *Simonds* v. *Simonds* (1978), 45 N.Y. 2d 233, 380 N.E. 2d 189, "[t]he husband, upon lapse or cancellation of the earlier policies, 'had by virtue of the separation agreement an obligation to name * * * [the first wife] as beneficiary on the later policies, an obligation enforceable in equity despite the husband's failure to comply with the terms of the separation agreement." *Id.* at 236, 380 N.E. 2d at 193; accord *Appelman* v. *Appelman* (1980), 87 Ill. App. 3d 749, 410 N.E. 2d 199; *Studley* v. *Studley, supra;* cf. *Carpenter* v. *Carpenter* (1985), 150 Ariz. 130, 722 P. 2d 298 (first wife's right to reach insurance proceeds in the hands of named beneficiary not defeated where settlement agreement specifies a particular group life policy provided by husband's employer and employer changes insurance carrier before husband's death).

Having found that the child maintained an equitable interest in the group life policy provided by the husband's second employer, the next question is what amount of proceeds the

---

[5] The mother contests this finding in her cross-appeal. Those contentions are discussed in Part VI, *infra.*

child may receive. In deciding this question, we must necessarily look to the underlying separation agreement since it operated to vest the child with her irrevocable rights. *Simonds* v. *Simonds, supra,* at 237, 380 N.E. 2d at 192-193; *Appelman* v. *Appelman, supra,* at 753, 410 N.E. 2d at 202-203. In construing the separation agreement, we look to effectuate the intent of the parties. *Kelly* v. *Medical Life Ins. Co., supra,* at paragraph one of the syllabus; *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244, 67 O.O. 2d 321, 313 N.E. 2d 374, paragraph one of the syllabus. The intent of the parties is presumed to reside in the language they chose to employ in the agreement. *Skivolocki, supra; Blosser* v. *Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus. Our conclusion that the child is entitled to insurance proceeds equal to three times the husband's salary at the time of his death is supported by several factors.

First, the separation agreement did not fix a cut-off for coverage under the policies. Under some circumstances, a court may order a spouse to provide life insurance as security for child support obligations. See, *e.g., In re Estate of Monreal* (1985), 422 Mich. 704, 375 N.W. 2d 329. In such a case, the child would only be entitled to those proceeds of the policy that secure the support obligation. *Puckett* v. *Puckett* (1985), 41 Wash. App. 78, 702 P. 2d 477; *Leveck* v. *Leveck* (Ky. App. 1981), 614 S.W. 2d 710. Once the child reaches the age of majority the obligation ceases. The failure to so specify in this case raises a presumption that the proceeds were not contingent upon the child's age.

Second, the separation agreement failed to state that the policies should carry a definite face value. Considering that the policies were indexed to the husband's current salary, the par-

ties most assuredly realized that a definite face value would be impractical. Reasonably assuming that the husband's salary would increase, the implication is that the parties most likely intended that the child receive all of the benefits of the policy. *Schwass* v. *Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E. 2d 957; *Glover* v. *Metropolitan Life Ins. Co.* (E.D. Mo. 1980), 499 F. Supp. 1308, reversed in part on other grounds (C.A.8, 1981), 664 F. 2d 1101; contrast *White* v. *Michigan Life Ins. Co.* (1972), 43 Mich. App. 653, 204 N.W. 2d 772 (transcript of divorce proceedings demonstrated that court's distribution of insurance proceeds effectuated the intent of the parties). The failure to specify the amount of proceeds the child was to receive leads to the conclusion that the parties did not intend to limit the child's recovery to three times the husband's salary at the time of the divorce.

Finally, equitable concerns compel the conclusion that the trial court did not err in granting the child a judgment commensurate to the husband's salary at the time of his death. Simply stated, this case arose from the husband's failure to do what he should have done. Presumably, had the husband fulfilled his obligations there would be no controversy. Our decision merely effectuates the equitable maxim, "equity regards as done that which ought to be done."

We are aware that several other jurisdictions have reached contrary results. See, *e.g., Madsen* v. *Estate of Moffitt* (Utah 1975), 542 P. 2d 187; *Reeves* v. *Reeves* (1976), 236 Ga. 209, 223 S.E. 2d 112; *Rindels* v. *Prudential Life Ins. Co. of America, Inc.* (1971), 83 N.M. 181, 489 P. 2d 1179. These cases have been criticized as relying too heavily on "* * * formalisms and too little on basic equitable principles, long established in Anglo-American law * * * and especially relevant when

family transactions are involved. * * *" *Simonds* v. *Simonds, supra,* at 239, 380 N.E. 2d at 195; *Carpenter* v. *Carpenter, supra,* at 135, 722 P. 2d at 303. We share these criticisms and therefore disapprove those decisions to the extent they are inconsistent with the law as applied herein. Accordingly, the trial court correctly determined that the child was entitled to insurance proceeds equalling three times the father's salary at the time of his death.

B

The estate next argues that any recovery by the child would be limited by R.C. 3917.06(E)[6] to an amount equal to three times the husband's salary at the time he left his employment at Merrill-Lynch. This contention was not addressed to the trial court. Hence we need not consider it. *Kalish* v. *Trans World Airlines, Inc.* (1977), 50 Ohio St. 2d 73, 4 O.O. 3d 195, 362 N.E. 2d 994; *Federal Deposit Ins. Corp.* v. *Willoughby* (1984), 19 Ohio App. 3d 51, 55, 19 OBR 134, 138, 482 N.E. 2d 1267, 1271; *Lin* v. *Reid* (1983), 11 Ohio App. 3d 232, 11 OBR 356, 464 N.E. 2d 189.

Similarly, the estate's arguments that any insurance proceeds be offset by Social Security benefits previously received were concededly not raised before the trial court. In any event, our analysis in Part IA, *supra,* makes clear that the life insurance was not expressly intended to secure child support obligations. In some instances, Social Security benefits received by a child may be credited against the obligor spouse's child support obligations. *Yuhasz* v. *Yuhasz* (Nov. 28, 1980),

Cuyahoga App. No. 42193, unreported; *Pride* v. *Nolan* (1987), 31 Ohio App. 3d 261, 31 OBR 546, 511 N.E. 2d 408; *Gilford* v. *Wurster* (1983), 24 Ohio App. 3d 77, 24 OBR 145, 493 N.E. 2d 258. However, in the absence of a clear intent to condition the maintenance of life insurance policies to child support obligations, no set-off should be ordered.

C

The estate argues that the trial court's decision created a windfall for the child. In so arguing, it points to various death benefits the child currently receives, as well as a settlement in a wrongful death action. It is the estate's contention that these funds far exceed any reasonable expectation of what the parties to the settlement agreement intended to provide to the child. This contention is without merit.

The issues before the trial court involved interpretation of the settlement agreement in order to ascertain the equitable rights of the child pursuant to her position as a beneficiary under the life insurance policy. Reference to other recoveries or benefits is completely irrelevant to those issues. The child is simply recovering her equitable interest. Accordingly, we reject all of the estate's arguments. The first assigned error is overruled.

II

The second assigned error complains that the trial court erred in ordering the estate to pay interest from the date the insurance proceeds were received by the estate rather than the date on which the trial court

---

[6] R.C. 3917.06(E) provides in relevant part:

"* * * [I]n case of the termination of the employment for any reason * * * such person is entitled to have issued to him by the company, * * * a policy of life insurance in any one of the forms customarily issued by the company, except term insurance, in any amount not in excess of the amount of his protection under such group insurance policy at the time of such termination * * *."

entered final judgment. This contention has merit.

Where money is due under a contract that stipulates the amount to be paid, interest accrues from the time that the money due should have been paid. *Shawhan* v. *Van Nest* (1874), 25 Ohio St. 490. Where the amount of the debt is clear, but the only issue raised is whether the plaintiff is entitled thereto, interest runs on the debt from the time that it was found due and payable by the court. *Braverman* v. *Spriggs* (1980), 68 Ohio App. 2d 58, 60, 22 O.O. 3d 47, 48, 426 N.E. 2d 526, 528.

In this case, neither the amount of the debt nor plaintiff's entitlement thereto was decided until the trial court's judgment. Under similar facts, this court in *Hook* v. *Hook* (1987), 35 Ohio App. 3d 51, 519 N.E. 2d 687, found that litigation concerning an ex-wife's right to collect insurance proceeds from the deceased spouse did not create a debt due and payable until final judgment was rendered by the court. *Id.* at 55, 519 N.E. 2d at 691. Thus, in this case the running of interest should have been delayed until final judgment settled questions relating to the amount of entitlement of the insurance proceeds. *Braverman* v. *Spriggs, supra,* at 60, 22 O.O. 3d at 48, 426 N.E. 2d at 527-528. Accordingly, we sustain the second assigned error and remand this part of the action to the trial court with instructions to calculate interest from the date of judgment.

### III

The third assigned error complains that the trial court erred in adjudging the decedent-husband in contempt for failing to comply with the separation agreement. This contention is without merit for the reason that the husband's contempt citation did not affect a substantial right of the estate or the new party defendants. Civ. R. 61; *McQueen* v. *Goldey* (1984), 20 Ohio App. 3d 41, 44, 20 OBR 44, 46, 484 N.E. 2d 712, 716. Moreover, the finding of contempt was a necessary predicate for enforcement of the settlement agreement through the constructive trust. Consequently, we find no reversible error in the contempt adjudication. The third assigned error is overruled.

### IV

In its fourth assignment of error, the estate argues that the trial court erred in approving the referee's report and recommendations in view of the referee's failure to require the child to reimburse the estate for her proportionate share of federal estate tax. This issue, however, was not properly before the referee at the hearing. While the record indicates that some testimony concerning taxes was elicited at the hearing, the estate failed to request a ruling on the issue of federal estate taxes. Similarly, in its objections to the referee's report and recommendation, the estate again referred to certain portions of the administratrix's testimony but failed to demonstrate that the issue had been considered. Accordingly, we find no error in the trial court's failure to apportion the federal estate tax. The fourth assigned error is overruled.

### V

The fifth assigned error contests the court's order that the estate pay the child $23,277.99 toward her attorney fees. The estate argues that the award of attorney fees is not authorized by statute and constitutes an abuse of discretion.

We agree with the estate's initial proposition that attorney fees were not authorized by statute. The referee concluded that the estate's failure to pay immediately to the child the insurance proceeds constituted a child support

arrearage and that under R.C. 3113.21 the court was bound to consider an award of attorney fees and expenses. Our discussion in Part I(A), *supra,* makes clear, however, that the insurance obligation was not specifically intended to secure the child support obligation. Consequently, the award of attorney fees was allowable, if at all, pursuant to the court's authority to order attorney fees in post-decree proceedings. See *Blum* v. *Blum* (1976), 9 Ohio St. 2d 92, 38 O.O. 2d 224, 223 N.E. 2d 819, syllabus.

While the life insurance policy was not specifically intended to secure the support obligation, the failure to provide the required insurance was nonetheless a violation of a valid court order. Thus, the court has the power to award attorney fees since this is a post-decree enforcement action. *Blum, supra; Rand* v. *Rand* (1985), 18 Ohio St. 3d 356, 358, 18 OBR 415, 416, 481 N.E. 2d 609, 611. The remaining question is whether the court abused its discretion in determining the amount of attorney fees.

A review of the evidence before the referee amply supports its conclusions concerning the amount of fees to be awarded to the child. The estate's obligation to turn over insurance proceeds accrued from the date of the husband's death, notwithstanding the estate's protestations to the contrary. Cf. *Braverman* v. *Spriggs, supra,* at 60, 22 O.O. 3d at 48, 426 N.E. 2d at 528 ("Where the amount of the debt is clear, but the only question raised is whether the plaintiff is entitled thereto, interest runs on the debt from the time that it was due and payable * * *"). Furthermore, the fact that the court held that the child could not recover proceeds from other policies is of no consequence. The referee carefully outlined his considerations in awarding attorney fees and expenses, and we find no abuse of discretion in the trial

court's approval of that reasoning. Having found the calculation of the amount of attorney fees and expenses to be within the court's discretion, we overrule the fifth assigned error.

## VI

In her cross-appeal, the child raises two assigned errors that collectively challenge the trial court's judgment that she was not entitled to receive proceeds from certain other insurance policies held by the husband at the time of his death. She contends (a) that certain policies covering accidental or business-related accidental death constituted "life insurance" policies as contemplated by the separation agreement, and (b) that she was entitled to the entire amount of proceeds under the group life policy from Kidder, Peabody, the husband's employer at the time of his death. Neither contention has merit.

There is a significant difference between accidental death insurance and life insurance. *Ferguson* v. *Owens, supra,* at 227, 9 OBR at 569, 459 N.E. 2d at 1296. Generally, "life insurance" means insurance against death regardless of cause; "accidental death insurance" means insurance against death caused only by accident. *Gudnason* v. *Life Ins. Co. of North America* (Va. 1986), 343 S.E. 2d 54. The determinative issue centers on the intent of the parties when they referred to "several policies of insurance issued upon [the husband's] life"; that is, did they intend to obligate the husband to name the child as beneficiary on the accident policies?

Following the hearing, the referee concluded that the vagueness of the separation agreement supported the conclusion that the parties did not intend that the accident policies be amended to name the child as beneficiary. We agree with this conclusion. The parties were well aware that four

84

separate insurance policies were in force at the time of divorce. Had they intended to extend the separation agreement to reach those policies, they could have stated that intention in clearer terms. Moreover, the mere reference to "life insurance" or words of similar effect is not sufficient to demonstrate the intent of the parties given that everyday parlance normally connotes any form of insurance benefits payable upon death as "life insurance." *Id.* at 58. Consideration of the significant difference between the life insurance and accidental death insurance policies, as well as the failure to provide clearly that the accidental death policies were included in the agreement, compels the conclusion that the trial court correctly approved the referee's recommendation.

### B

The final point raised in the cross-appeal is that the lower court erred in failing to award the child the entire amount of proceeds from the Kidder, Peabody policy, rather than the $206,778.36 that represented three times the husband's salary at the time of his death. This contention is without merit for the reason that the trial court's judgment placed the child in the position she would have been in had the husband fulfilled his obligations under the separation agreement. See Part I(A), *supra.* The cross-assignments of error are overruled.

The judgment is affirmed in part, reversed in part and the cause is remanded.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

DYKE and CORRIGAN, JJ., concur.