NEW YORK LIFE INSURANCE COMPANY, Plaintiff, v. MARSHA A. SOGOL et al., Defendants (Linda Muslin, Counterplaintiff-Appellant; Marsha A. Sogol, Counterdefendant-Appellee).

First District (4th Division)   No. 1—99—1683

———

Opinion filed December 30, 1999.

Schwartz Cooper Greenberger & Krauss, Chartered, of Chicago (Robert D. Nachman, Bret A. Rappaport, and Alex Pirogovsky, of counsel), for appellant.

Malcolm B. Gerber, of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

On September 1, 1998, New York Life Insurance Company (New York Life) and New York Life Insurance and Annunity Corporation (New York Life Annuity) filed an action for interpleader against Linda Muslin and Marsha A. Sogol to determine who would receive the proceeds of two life insurance policies and an annuity policy owned by Bruce Muslin. Bruce had changed the beneficiary of the policies issued by New York Life and New York Life Annuity. He had also changed the beneficiary on an annuity issued by the Equitable of Iowa (Equitable Annuity). These changes were made during the pendency of a dissolution of marriage proceeding brought by Linda Muslin against him. Linda filed a two-count counterclaim against Sogol seeking a declaratory judgment and alleging conversion of the proceeds of the Equitable Annuity. Sogol filed a motion to dismiss that counterclaim.

On January 15, 1999, the court entered an order granting the motion to dismiss, and on April 14, 1999, the court entered an order granting Sogol's motion for judgment on the pleadings or in the alternative dismissing Linda Muslin as a party defendant in the interpleader action.

Bruce and Linda were married sometime prior to September 1978. Between 1978 and 1990, Bruce purchased two life insurance policies and an annuity from New York Life, and the Equitable Annuity. At the time Bruce purchased the policies, the beneficiaries of the policies were Linda and their children.

In 1993, Linda filed a dissolution action against Bruce in the circuit court of Cook County. On November 8, 1993, by agreement of both Bruce and Linda, the court entered a preliminary injunction prohibiting Bruce from "transferring, encumbering, concealing, damaging or otherwise disposing of the property of Linda Muslin or any other property of the parties." On June 6, 1996, the dissolution action was inadvertently dismissed for want of prosecution but reinstated on

August 23, 1996. Linda never prosecuted her petition for dissolution of marriage to a final judgment. On or about March 4, 1998, while the injunction was still in effect, Bruce submitted change of beneficiary forms to New York Life and Equitable of Iowa, purporting to remove Linda and their children as beneficiaries of the policies and replace them with Sogol, his girlfriend. This occurred only two months prior to his death on May 8, 1998. Sogol thereafter submitted claims to New York Life and Equitable of Iowa for the proceeds of the policies. Linda was unaware that Bruce had changed the beneficiaries until after his death.

The court heard oral argument on Sogol's motion to dismiss on January 5, 1999. On January 15, 1999, the court dismissed Linda's counterclaim without stating any basis for the ruling. This decision, in effect, disposed of the interpleader action, and accordingly, the trial court entered the final order on April 14, 1999. However, two days later, on April 16, 1999, the court granted Linda's motion for stay pending appeal. Linda appeals from the orders entered on January 15 and April 14, 1999.

Linda argues that the trial court erred as a matter of law when it failed to award the proceeds of the life insurance policies and annuity to her due to Bruce's violation of the terms of the preliminary injunction. Sogol responds that the preliminary injunction did not survive the dismissal of the dissolution action, was not revived in the reinstatement order, and, at any rate, did not survive the death of Bruce. Sogol argues that once Bruce died, the divorce action, including the preliminary injunction, abated as if it never existed.

The issue before the court when reviewing a motion to dismiss is one of law, and the standard of review is *de novo*. *Van Horne v. Muller*, 294 Ill. App. 3d 649, 653, 691 N.E.2d 74, 76 (1998).

■ The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156, 601 N.E.2d 720, 726 (1992). It is an extraordinary remedy that is applicable only to situations where an extreme emergency exists and serious harm would result if not issued. *Hartlein*, 151 Ill. 2d at 156, 601 N.E.2d at 726. An order vacating the inadvertent dismissal of a plaintiff's complaint renders the dismissal order nugatory and returns the parties to the status they had prior to the entry of the dismissal order. *Kelch v. Watson*, 237 Ill. App. 3d 875, 878, 604 N.E.2d 971, 973 (1992). The effect of a vacated order is that of a void order. *Kelch*, 237 Ill. App. 3d at 877, 604 N.E.2d at 973.

It appears that this case is one of first impression in Illinois. The question is whether a preliminary injunction in a dissolution proceeding, which has abated upon the death of one of the parties, survives abatement.

In connection with the divorce suit filed by Linda against Bruce, a preliminary injunction was issued on November 8, 1993. This injunction prohibited Bruce from "transferring, encumbering, concealing, damaging or otherwise disposing of the property of Linda Muslin or any other property of the parties." The dissolution action was dismissed on June 6, 1996, for want of prosecution. However, on August 23, 1996, the case was reinstated. Sogol argues that since the reinstatement order did not specifically state that the preliminary injunction was reinstated, it was no longer in effect. However, the case was reinstated under the original docket number, not a new number. Thus, since there was no reason to assume that only part of the case was reinstated, the reinstatement of the dissolution action would also reinstate the preliminary injunction, which was part of the original case.

Sogol contends that because the dissolution action was dismissed for want of prosecution, the preliminary injunction could not survive. In addition, she argues that at the time of Bruce's change of beneficiary, five years had elapsed since the filing of the dissolution action. Since a preliminary injunction is meant to be of short duration, Sogol asserts that the injunction could not have lasted five years. However, while a preliminary injunction is not an injunction for an indefinite period of time, there is no precise time limit for one. "A preliminary injunction *** is not necessarily of extremely brief duration since its primary purpose is to provide relief to the injured party and maintain the status quo until the trial on the merits." *Bullard v. Bullard*, 66 Ill. App. 3d 132, 135, 383 N.E.2d 684 (1978). When the case reached a conclusion or termination, the preliminary injunction would end. On or about March 4, 1998, when Bruce submitted the change of beneficiary forms to New York Life and Equitable of Iowa, the preliminary injunction was still in effect, and Bruce's attempt to change the beneficiary of the policy was ineffective. In submitting the change of beneficiary forms, Bruce sought to circumvent the order of the court, which, by law, he could not do.

■ Sogol argued below that the death of Bruce retroactively dissolved the preliminary injunction and cites the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/101 *et seq.* (West 1998)) for the argument that the preliminary injunction and dissolution of marriage proceedings terminated upon his death as though neither of them had ever existed. However, section 501(d)(3) states:

"(d) A temporary order entered under this Section:

\* \* \*

(3) terminates when the final judgment is entered or when the petition for dissolution of marriage or legal separation or declara-

tion of invalidity of marriage is dismissed." 750 ILCS 5/501(d)(3) (West 1998).

■ Thus, by the terms of the Act, the preliminary injunction did not terminate until Bruce's death. Until his death, Bruce did not have the power or the authority to change the beneficiary of the policies because the preliminary injunction was still in effect. While his death did indeed abate the dissolution of marriage action, it did not abate the preliminary injunction.

In making this ruling we look to other jurisdictions for guidance. In *Candler v. Donalson*, 272 F.2d 374 (6th Cir. 1959), the United States Court of Appeals for the Sixth Circuit ruled in favor of the spouse in a case very similar to the present one. In *Candler*, Wheaton Candler was issued a life insurance policy with his wife Margery and their son as the beneficiaries. After Wheaton filed a divorce action, the trial court entered an injunction requiring him to continue to make payments on his insurance policies and restraining him from selling, assigning or otherwise disposing of the property mentioned in the injunction and other property and assets of the parties. Subsequent to the injunction being entered, he changed the beneficiary of his life insurance policy to his mother. After Wheaton's death, an interpleader action was filed by the insurance company. The trial court held that the proceeds belonged to his mother because Margery only had a contingent interest, and the injunction did not prohibit Wheaton from changing the beneficiary of the policy. The sixth circuit reversed, holding that, although the injunction did not expressly prohibit Wheaton from changing the beneficiary and that he had such a right under the policy, "under certain circumstances equities may arise in favor of the named beneficiary which would deny to the insured the right to make such a change." *Candler*, 272 F.2d at 376-77. In addition, the court noted that the purpose of the injunction would be undermined if Wheaton were permitted to change the beneficiary.

In a second case, *Willoughby v. Willoughby*, 758 F. Supp. 646 (D. Kan. 1990), the United States District Court for the District of Kansas also contained facts similar to the case at bar. In *Willoughby*, the trial court entered a restraining order against the husband, Martin Willoughby, in a divorce proceeding, prohibiting him from withdrawing, selling, encumbering or disposing of the money, property or assets of the parties. Shortly thereafter, Martin changed the beneficiary on his life insurance policy from his wife to their son, with Martin's father as secondary beneficiary. The son predeceased Martin, and Martin committed suicide soon thereafter. Martin's father made a claim to the life insurance proceeds. The court determined that the life insurance policy was property subject to the restraining order, although not

specifically mentioned in that order. First, the court found that the intent of the broad terms of the restraining order was clear, that "the court intended to maintain the status quo regarding the parties' property pending further disposition of the case." *Willoughby*, 758 F. Supp. at 649. Second, the wife could be deemed to have obtained a vested interest in all marital property, including the life insurance policy, by filing her petition for a divorce, under the Kansas equivalent of the Illinois disposition of property statute (750 ILCS 5/503(e) (West 1998)). Third, the court cited the 17-year marriage of the parties, Martin's attempt to disregard the restraining order, and the fact that his father was only a donee beneficiary as a basis for finding that "the equities weigh strongly in favor of [the wife's] interest in the life insurance proceeds." *Willoughby*, 758 F. Supp. at 650.

None of the cases that Sogol cites support her contention that an injunction is dissolved retroactively upon the death of a spouse. In *In re Estate of Chandler*, 90 Ill. App. 3d 674, 413 N.E.2d 486 (1980), the husband was served with an injunction prohibiting the transfer of marital assets after he transferred money out of a joint savings account he held with his wife and changed the beneficiary of a trust account from his wife to his brother. The husband died before final judgment was entered in the dissolution proceeding. When the wife filed a citation to recover from the husband's brother the funds that were transferred, the appellate court held that the husband's death deprived the court of jurisdiction.

In *In re Marriage of Black*, 155 Ill. App. 3d 52, 507 N.E.2d 943 (1987), the case did not deal with an injunction or other court order that would have abated. Again, the court ruled that upon the death of a party, dissolution of marriage proceedings terminate. In *In re Estate of Schriver*, 289 Ill. App. 581, 7 N.E.2d 611 (1937), the husband died four days after the wife filed the divorce complaint. The court ruled that the husband's death deprived the trial court of jurisdiction over the parties and the subject matter of the action. In *Brandon v. Caisse*, 145 Ill. App. 3d 1070, 496 N.E.2d 755 (1986), the issue was whether the trial court could enter judgment in a divorce case after one of the parties dies and whether the case was ripe for judgment at the time of death. The court held that the trial court could not enter such a judgment. In *Hook v. Hook*, 35 Ohio App. 3d 51, 519 N.E.2d 687 (1987), the court held that the husband's divorce action was abated by his death and that the *ex parte* temporary restraining order was also extinguished. Plaintiff cited *Candler* as authority. However, the *Hook* court found *Candler* inapposite, because an antenuptial agreement had been entered into which provided that " 'each party hereto may freely sell or otherwise dispose of any or all of his property, now owned

or hereafter acquired, by gift, sale or deed, during life, or by Last Will and Testament.' " 35 Ohio App. 3d at 54, 519 N.E.2d at 690. The *Hook* court found no equities weighed in favor of plaintiff as they did in the *Candler* case.

None of those cases support Sogol's assertion that the preliminary injunction dissolved retroactively upon the death of a spouse.

Based upon the foregoing analysis, the judgment of the circuit court is reversed and remanded for further proceedings, and the judgment for Sogol on the interpleader action and on the counterclaim action is reversed and cause remanded.

Reversed and remanded.

HOFFMAN, P.J., and HALL, J., concur.